WILLIAM M. STEDMAN *versus* MATHIAS VICKERY, AND JAPHET H. MCALLISTER AND SAMUEL G. PIKE, *Trustees.*
JOSIAH ATKINS & *al. versus* SAME.

Foreign attachment, or the trustee process, is regarded as a species of equitable action.

The Court may, in its discretion, allow a person summoned as trustee, to withdraw a bill of exceptions, filed by him at a previous term, to the ruling of the Court adjudging him trustee on his disclosure, and may then give him leave to disclose further.

Whether a supposed trustee, after having completed and filed his disclosure, shall have leave to disclose further, is a question addressed to the legal discretion of the Court, upon the facts and circumstances of the case.

A supposed trustee disclosed that, having become liable for the principal defendant to a large amount, he took as security therefor, a mortgage of his house, and an absolute conveyance of his store, giving back a memorandum to reconvey upon being indemnified : — *Held,* that he was not trustee.

The question whether the conveyances disclosed by the trustee, are void for any cause, cannot be considered or determined upon exceptions to the judgment of the Court upon the disclosure.

A person cannot be held as trustee for goods of the principal defendant mortgaged to him, of which he has not actual, but only constructive possession.

If the plaintiff wishes to avail himself of the goods of the defendant mortgaged to the supposed trustee, he must apply to the Court for an "order and decree" in accordance with R. S. (1841,) c. 119, § 58. These provisions are not applicable, however, to such goods as have been in the possession of the trustee and have been sold by him.

If he neglect to procure and comply with such order he has no right to claim that the mortgaged property shall be exposed to the officer having the execution issued in the case.

A. conveyed a vessel to B. by bill of sale, upon an agreement that B. should appropriate the proceeds of the vessel to the discharge of A.'s debts for which B. was surety : — *Held,* that this agreement was a sufficient consideration for the conveyance.

The sale being without fraudulent intent and valid between the parties, the fact that some of the parties may have incurred penal liabilities for infractions of the revenue laws cannot have the effect to charge the trustee.

It *seems* that even if the conveyance were fraudulent in fact, the trustee might hold the property to secure his *bona fide* liabilities.

In determining the liability of a trustee, the facts disclosed by him are to be taken as true.

A mortgagee may permit his mortgager to use or dispose of the mortgaged property, until the rights of third parties intervene.

Stedman *v.* Vickery and Trustees. Atkins *v.* same.

If, after a person has been summoned as trustee, he permit property of the principal defendant in his possession to be disposed of, he must account therefor.

A trustee is entitled to deduct from the property in his hands, or the proceeds thereof, all sums which he had paid for the principal defendant; and to hold the balance as security for all his outstanding liabilities on defendant's account, and for all his demands against him of which he could avail himself, had he not been summoned as trustee. He is to be charged only for the balance after their mutual demands are adjusted.

When a plaintiff alleges, in pursuance of the R. S. of 1841, c. 119, § 33, "any other facts than those not stated nor denied by the supposed trustee," the allegations must be clear and distinct, setting forth the "other facts" to be proved. A mere allegation that a certain sale by the principal debtor to the trustee was fraudulent or without consideration, when the trustee in his disclosure has stated the circumstances and the consideration, and when no "facts" to be proved by the plaintiff are disclosed, is insufficient.

On Exceptions from *Nisi Prius*, Appleton, J., presiding.

Trustee's Disclosure.

Joseph H. McAllister, one of the supposed trustees, who resided in St. Stephens, New Brunswick, disclosed at Calais before a magistrate, by consent of parties; he appeared by his attorney at the first term and filed his disclosure, upon which he was charged. A motion was then made by the trustee for leave to make a further disclosure; which motion was overruled by the presiding Judge, and exceptions to the judgment of the Court, charging the trustee and denying the motion, were duly filed and allowed.

At the second term of the Court the trustee appeared in person and renewed his motion for leave to disclose further. The presiding Judge declined to grant such leave, as the case was then pending on the exceptions; whereupon, by leave of Court, the exceptions were withdrawn. The Court then granted leave for the trustee to disclose further; to all of which the plaintiff duly objected. Said trustee made a further disclosure, and the plaintiffs filed allegations of facts to be proved; to which allegations the said trustee demurred, and the demurrer was joined. Upon the disclosure, demurrer and allegations, the presiding Judge charged the trustee for the value of the brig Black Hawk, mortgaged to him by the principal debtor, and for her earnings, so far as they ex-

ceeded the amount of the liabilities of the trustee, as indorser for Vickery, at the date of the mortgage, and which were secured by it.

The principal defendant was defaulted at the second term.

The full Court are to enter such judgment as the law requires.

Samuel G. Pike, the other person summoned as trustee in these actions, having made his disclosure, the plaintiffs filed allegations in pursuance of R. S., 1841, c. 119, § 33, to which the said trustee demurred, and there was a joinder in demurrer. After a hearing in the case, the presiding Judge ordered the said trustee to be discharged, to which order the plaintiffs excepted.

The facts and questions of law involved in both disclosures, are stated in the opinion of the Court.

*F. A. Pike, Joseph Granger, jr., George W. Dyer, jr.,* and *Downes & Cooper,* for plaintiffs.

*T. J. D. Fuller,* for trustees.

APPLETON, J. — The trustee, McAllister, having been charged on his disclosure, at the April term, 1855, by the presiding Justice, duly alleged exceptions thereto. . At the October term following, the trustee moved for leave to disclose further. As his exceptions to the ruling by which he had been charged were then pending, the motion was denied. Thereupon, by leave of the Court, he withdrew his exceptions, and he was then allowed to disclose further, to all which the plaintiffs excepted.

In cases brought from the Common Pleas to the Supreme Judicial Court by appeal, it was the constant practice to receive further disclosures, the appeal being regarded as a continuation of the proceedings in the Court of Common Pleas. "And," remarks SHAW, C. J., in *Hovey* v. *Crane,* 12 Pick. 167, "until a final judgment rendered, there seems nothing to restrain the general power of the Court from receiving further disclosures, if necessary to the rights of the parties." In *Carrigan* v. *Sidebottom,* 3 Met. 297, where, in an answer, a

fact had been stated incorrectly, or in terms which would admit of an inference or implication not intended, the trustee was allowed, without further interrogatory, to make an additional answer, correcting or qualifying the supposed erroneous answer. In *Boynton* v. *Foster*, 7 Met. 415, it was held, that a trustee, who had been discharged in the court below, must, upon the removal of the cause, follow the same in the Supreme Court, and there answer further interrogatories, if required by the plaintiff. Whether persons summoned as trustees, having once answered interrogatories, shall further answer, is a matter entirely within the discretion of the Court. *Warren* v. *Perkins*, 8 Cush. 518.

By R. S., c. 119, § 79, the trustee, though he may have disclosed in the original suit, may be permitted, or required, to disclose anew on *scire facias*. Now, no reason is perceived why that which may be done in a subsequent suit, may not much more properly be done in the original process, and thus the subsequent litigation be avoided. It is for the interest of the public that there be an early termination to suits; and it is better for all that the facts be ascertained and the legal rights of the parties be determined now, than to await a second suit, in which to receive what might have been heard in the first with a great saving of delay and expense.

The trustee McAllister, states, that having become liable for the principal debtor for a large sum, in January, 1852, he took a mortgage of his house and an absolute deed of his store, giving back a memorandum to reconvey upon being indemnified. He cannot be charged for this real estate. If those conveyances are void for any cause, that question cannot be here considered or determined.

The trustee discloses a mortgage of the goods in Vickery's store, valued at $3000 at the date of the mortgage, and at $2000 at the time of the service of this trustee process. The trustee had previously become liable for a large amount for the mortgager, and there are ample reasons disclosed in the relations between the parties, why the trustee should ask, and

why the mortgager should give a mortgage, without imputing any fraudulent design to either party.

If the trustee had merely a constructive, and *not* an actual possession of the mortgaged goods, he cannot be charged as trustee. *Pierce* v. *Henries*, 35 Maine, 57.

If he was in actual possession, his disclosure shows outstanding liabilities, for an amount exceeding by thousands of dollars the value of the goods mortgaged in the store. If the plaintiff wished to avail himself of these goods, he should have moved the Court to "order and decree" the sum of money, upon payment of which, "within such time as the Court shall order, and while the right of redemption exists," the alleged trustee "shall deliver over the property to the officer serving the process, to be held and disposed of in like manner as if it had been attached on mesne process," &c. R. S., c. 119, § 58. This the plaintiff has neglected to do. He has, therefore, no right to claim that the mortgaged property shall be exposed to the officer having the execution which may finally issue in this case.

Some of the property of the principal defendant, in the hands of the trustee, has been sold by him. In such case, the provisions of § 58 are not applicable.

The arguments of the counsel mainly relate to the brig Black Hawk, which, on Dec. 1, 1854, was mortgaged to the trustee, and of which subsequently and on the same day he received an absolute bill of sale. The trustee discloses that being desirous to sell the brig, and with the avails relieve himself from the onerous liabilities he had incurred for the debtor Vickery, he took the bill of sale, he agreeing to pay the creditors where he was surety, the whole which he might realize from her, including earnings, as well as the money received on her sale, and allowing to said Vickery what he received from her. Without this arrangement it is obvious that he would have been unable to effect a sale, however desirable it might be, with the consent of the mortgager. With it, he was enabled to dispose of the brig whenever it might in his judgment become expedient.

It is insisted that this bill of sale is void as being without consideration; and further, that though thus void, it nevertheless is so far valid as to destroy or defeat the mortgage previously given.

The bill of sale, whether valid or not, does not appear to have been given with any fraudulent intent.

It was held in *Little* v. *Little*, 13 Pick. 427, that an outstanding liability as surety for another, together with a promise, express or implied, by such surety to the principal, that he will pay the debt, and so indemnify the principal, is a valid consideration for a promissory note from the principal to such surety, payable on demand. In *Garden* v. *Webber*, 17 Pick. 407, it was decided that where a promissory note, secured by mortgage, was given in order to indemnify the promisee against any loss he might suffer by reason of his subsequently indorsing for the accommodation of the promisor, and the promisee did accordingly indorse for the promisor, that such note was valid as against creditors of the promisor, whose claims accrued after such indorsements were made. The same doctrines were re-asserted in *Swift* v. *Crocker*, 21 Pick. 241. According to these decisions, the promise of the trustee to appropriate the proceeds of the brig to the discharge of debts for which he was liable with Vickery as surety, must be regarded as a sufficient consideration for the conveyance to him.

"This form of process," remarks Parker, C. J., in *Boardman* v. *Cushing*, 12 N. H., 105, "is regarded as an equitable action, and it would not consist with equity to deprive the party of a mortgage security by reason of a mere mistake in the mode of taking it." In that case, as in the one under consideration, the conveyance was taken with no design to defraud, but on the supposition that in this mode the rights of the trustee could be more effectually secured.

If the bill of sale were to be regarded as void, still it is not readily perceived how the giving of a void bill of sale would defeat a previous valid mortgage; or why, if void, it should be upheld merely to destroy an honest claim. The

mortgage was given in good faith, and for a sufficient consid-
eration. It has never been canceled. The trustee entered
into possession of the property mortgaged; and it would be
a strange result if he were to lose security otherwise valid,
by an act which was either voidable, or if valid, strengthened
and enlarged his prior rights. It would seem, according to
*Ripley* v. *Otis,* 6 Pick. 475, that even if the bill of sale were
to be regarded as fraudulent in fact, still the trustee would be
entitled to hold the property to secure himself against his
original liabilities.

It is alleged, and for the purposes of this decision it may be
conceded, that the trustee was an alien, and having taken the
bill of sale of the brig, conveyed the same in trust for him-
self to Samuel G. Pike, in whose name she was registered, and
by whom, when sold by the trustee, the transfer was made.

It is insisted, that these conveyances were in conflict with
the revenue laws of the United States, and that the brig is
liable to forfeiture. It is immaterial how that may be, for the
attaching creditors have no privity with the United States,
and can derive no aid therefrom. The plaintiffs cannot inter-
pose any liability to forfeiture, thereby to charge the trustee.
If the brig had been forfeited, and an adjudication to that
effect been made, the trustee could not be charged, for the
title would be in the United States. If there was a liability
that such would be the result, the possibility that the trustee
might lose the vessel, would furnish no argument for holding
him. The sale was valid as between the parties, and whether
some of the parties may or may not have incurred penal lia-
bilities for some infractions of the revenue laws, it will be
time enough to consider when the question is so presented
that it will be our duty to determine it.

By R. S., c. 119, § 33, "the plaintiff or trustee may allege
and prove any other facts not stated nor denied by the sup-
posed trustee, which may be material," in deciding how far
the trustee is chargeable.

Many of the allegations filed, are to the effect, that the con-
veyance of the Black Hawk was without consideration and

fraudulent and void. In these allegations no new facts are stated, but rather the inferences the plaintiffs seek to have drawn from the facts disclosed by the trustee.

To enable the plaintiffs to charge the trustee, the allegations must be clear and distinct, setting forth the "*other facts*" to be proved. The trustee has disclosed all the circumstances attending the conveyance and the consideration for which it was made. The mere allegation that it was fraudulent, or without consideration, when the trustee has stated the circumstances and the consideration, and where no facts to be proved are disclosed, is not enough. *Pease* v. *McCusick*, 25 Maine, 73; *Gouch* v. *Tolman*, 10 Cush. 105. In determining the liability of the trustee the facts disclosed were taken as true. If the statements of the trustee are false, the plaintiffs have their remedy. *Laughran* v. *Kelley*, 8 Cush. 199. In the present posture of the case, the disclosure must be regarded as true.

The allegation, that McAllister has permitted the debtor to use the earnings of the brig, is not sufficiently definite to be perceived to be material. If this was before the plaintiffs' writs were served, it is unimportant. The mortgagee may permit the mortgager to use or dispose of the mortgaged property. Till the rights of third persons arise, it is a matter solely between them. It is only when creditors intervene that inquiry becomes important. If, after he was summoned, the trustee permitted property of which he was in possession to be disposed of by his debtor, he may be held to account therefor. But that is not alleged.

The allegations asserting a violation of the revenue laws of the United States, are entirely irrelevant to the question under consideration. The trustee is neither to be charged for violating them nor refraining from their violation.

The trustee does not disclose specifically when his liabilities for the principal debtor accrued. The fifth allegation is, that a large portion of them accrued subsequent to the conveyance of the brig Black Hawk from the trustee to Pike, the other trustee. The times when the trustee became liable, may be-

come important in determining the state of the accounts between the principal defendant and the trustee, and in ascertaining whether or not there is any balance in his hands. The trustee may have leave to disclose further. If, in his further disclosure, this question is left in doubt, the plaintiffs may offer proof on this point.

From the personal property, or the proceeds of the same in his hands, the trustee is entitled to deduct all payments of sums for which, previous to the conveyance of the defendant to him, to which reference has been had, he had incurred liabilities, and to hold the balance as security for all outstanding liabilities thus incurred. He is further to "be allowed to retain or deduct out of the goods, effects and credits in his hands, all his demands against the principal defendant, of which he could avail himself if he had not been summoned as trustee, whether by way of set-off on a trial or by a set-off of judgment on executions between himself and the principal defendant; and he shall be liable for the balance only after their mutual demands are adjusted." R. S., c. 119, § 70; R. S. of 1857, c. 86, § 64.

The trustee McAllister, having the Black Hawk in his possession, and having disposed of the same, is to be held for the amount for which it was sold, subject to the deductions already specified. It is obvious, therefore, that the trustee Pike cannot be charged for the same property.

*The exceptions in the case of the trustee Pike are overruled.*
*The exceptions in the case of the trustee McAllister are sustained.*

TENNEY, C. J., and HATHAWAY, MAY and GOODENOW, J. J., concurred.