### John S. Gay v. John S. Bidwell and others.

The courts will not infer a dishonest meaning from a written instrument, where an honest one is possible, and consistent with the whole tenor of the instrument.

A chattel mortgage of a stock of goods, which leaves the mortgagor in possession, and by inference authorises him to sell in the usual course of business, is good between the parties, and not necessarily fraudulent as to creditors.

GAY *v.* BIDWELL.

Being good between the parties, such a mortgage could not be fraudulent on its face against creditors, since it would not show there were any creditors, or if it it did, it would not appear but that they had assented to it, or were themselves sufficiently secured.

A creditor who does not show that he was such at the time of the giving of such a mortgage, is not in position to attack it as fraudulent, on the ground that it allows the mortgagor to remain in possession and dispose of the mortgaged property.

*Heard November 4th and 8th. Decided December 9th.*

Appeal in Chancery from Kent circuit. The case is sufficiently stated in the opinions.

*Pond & Russell* and *E. S. Eggleston* for complainant:

The provision in the mortgage which makes it cause of forfeiture if the mortgagors shall sell otherwise than in the ordinary course of their usual business, is not equivalent to a stipulation or agreement that they may so sell.—3 *Mich.* 110; 4 *Mich.* 296; 5 ꞌ*Mich.* 108. Doubtless it must be construed to allow this until the mortgagee should see fit to take possession, but this he might do at any time. But such an intention appearing in the mortgage, does not necessarily render it fraudulent and void as to creditors. An agreement to that effect shown *aliunde* clearly would not.— 19 *N. Y.* 123; *Oliver v. Eaton* [*ante p. 108*]. And we insist there is no sound distinction between cases where the understanding is, and those where it is not, expressed in the mortgage. Mortgages containing stipulations of similar character have frequently been held valid.—2 *Cush.* 294; 3 *Metc.* 518; 11 *Metc.* 333; 2 *Story*, 646; 40 *Me.* 561.

*Holbrook & Bishop* for defendants:

The mortgage is void on its face, for the reason that, by necessary implication, it gives permission to the mortgagors to deal with the goods mortgaged as their own, in the course of their ordinary business.—13 *Barb.* 380; 5 *Seld.* 213; 4 *Comst.* 580; 6 *Duer*, 504. And it is also fraudulent and void as a matter of fact, for the reason that the mortgagee allowed the mortgagors to deal with the goods as

their own after it was given. — *Robert on Frauds*, 545, 584; 2 *Kent.* 512 *and cases cited;* 2 *Wend.* 596; 3 *Wend.* 348; 9 *Wend.* 200; 17 *Wend.* 492; 23 *Wend.* 653; 8 *Barb.* 103; 4 *Hill.* 296; 4 *Denio*, 174; 3 *Kern.* 577; 4 *Yerg.* 541; 3 *Metc.* 117, *and cases before cited.* And in chancery the question of fact as well as of law must be passed upon by the court.

CAMPBELL J.:

The complainant having endorsed two notes for the accommodation of John S. Bidwell & Son, which were past due and dishonored, received from them, through his attorney, a chattel mortgage conditioned to pay the notes, and any judgments and costs, so that Gay should suffer no loss expense or costs by reason of their non-payment at maturity. There was a further clause as follows: "But in case of judgments recovered on said notes, and execution issued thereon, damages interest and costs thereon shall not, during the life of the execution or executions, be fully paid, or if the said parties of the first part shall sell and dispose of said goods and chattels otherwise than in the ordinary course of their usual business, or assign the same to secure the payment of their just debts, without preferring the said Gay before any and every other creditor or creditors, then," &c. (closing in the usual form). This mortgage was given August 23d, 1856, and filed in the clerk's office September 15th. On the same day an assignment was made to Ambler, preferring Gay on account of this debt. October 1st, attachments were levied, and the bill is filed to have the goods sold by a receiver, and that this debt may be first paid.

Those defendants who resist complainant's demand claim that the mortgage was void, by reason of the alleged permission or right secured to the mortgagors, to sell and dispose of the goods, and of the fact that they continued for a time to do business, the goods being their stock in trade.

There is one case in Ohio (*Collins v. Myers*, 16 *Ohio*,

MICH 7.—21.

547) in which it is declared that where a mortgage expressly reserves or grants a right to the mortgagor to continue selling goods, the mortgage is entirely inoperative for want of certainty. In that case it contemplated future goods, and so far there was an uncertainty. But so far as present property is concerned, we do not perceive upon what basis the doctrine is founded. A defeasible estate is none the less an estate, until defeated. As to future goods, there may be good reason for holding that they can not be claimed without some further act done before adverse rights intervene. But the New York cases, so far as they sanction the idea at all, that a variable mortgage is inoperative of itself, confine their language to future acquisitions.

These New York authorities attack such mortgages upon the ground of fraud, and not because they deem them inoperative at all events. And holding, as we do, that such a mortgage is at any rate an operative instrument between the parties, to convey the property, we now proceed to examine into the rights of the mortgagee, in the case before us, against the opposing creditors.

The first question is whether the mortgage was fraudulent in fact. We are satisfied it was not. The case shows, beyond doubt, the reality and good faith of the debt secured, and the liability of the complainant on the paper, as well as its satisfaction by him. The statutory liability to lose the benefit of a mortgage not filed, might have arisen if any claims had intervened before filing. But the delay in filing was not fraudulent, and no adverse claims did intervene. The amount of the security was not excessive, and the evidence is satisfactory that the whole arrangement was honest and reasonable. The debt was a confidential one, but if it were not, a debtor may secure or prefer any debt he pleases.

Were, then, the facts such as to create a legal fraud, notwithstanding the actual good faith of the parties.

There are instruments which upon their face contain

provisions which can not be made to stand without unavoidably leading to fraud.  Such instruments have been held void as to creditors by many courts, and we are not inclined in the present case to discuss the propriety of such holding.  The instruments against which this interference has been most frequently invoked, have been general assignments by insolvent debtors.  As the rules applying to these require an unreserved surrender of prop·erty, with no resulting benefits to the debtor until his debts are paid, the assignment, if these primary rules are plainly violated, can not be reconciled with fairness.  Courts may differ as ˙ to whether particular phrases have that necessary tendency, as the decisions in this state have shown; but the assignment can always receive some interpretation from which it will appear whether it absolutely excludes the idea of honesty or not.  And it has always been a cardinal rule, never to infer a dishonest meaning, if an honest one is possible, and consistent with the whole tenor of the instrument. — *Nye v. Van Husan*, 6 *Mich.* 329,

The law does not impose any specific duty concerning the provisions of other securities.  A debtor may secure or pay any creditor at his option, and may use any property he pleases for that purpose.  There exist therefore very strong reasons applicable to the construction of assignments, which do not apply to other instruments.  And, while we are not inclined to lay down any rule of absolute exclusion, we are satisfied that, outside of assignments, the cases proper for declaring the existence of fraud in law, which can not be explained or disproved, are not frequent.  And when ·Judge Mullett, in *Griswold v. Sheldon*, 4 *Comst.* 580 (after demonstrating·that all the presumptions raised upon a chattel mortgage are disputable, and not conclusive) asks " how then can a chattel mortgage be void upon its face, unless it contains an admission that it was made to defraud creditors?" he puts a question not easily answered.

Our statute (which is the same as that of New York),

avoids all dispositions of property "made with the intent to hinder, delay, or defraud creditors;" but it also provides that "the question of fraudulent intent" "shall be deemed a question of fact, and not of law." In the case of *Oliver v. Eaton*, [*ante p.* 108] we endeavored to explain the design of this statute. It was plainly designed to allow no facts, upon which there was room for difference of opinion, to be taken from the jury; and to leave also to the jury the duty of drawing all necessary inferences from facts. See also *Gardner v. McEwen*, 19 *N. Y.* 123.

This case is perhaps as good a one as any other to illus-trate the statute. How can any one, from the face of this mortgage, and without reference to extraneous facts, draw any conclusion whatever, concerning either its intent or its bearing upon creditors? It would certainly be valid under any circumstances if there were no creditors. It does not appear from the mortgage that there were any. It would not injure other creditors if they were abundantly secured. It does not show they were not. It would not be void if they had authorized it. And many other cases might be suggested, showing that, without proof of external facts, there could be no conclusive presumption at all. And of all those outside facts the jury are sole arbiters under any theory. The cases in New York cited by the defendants, in 4 *Comst.,* 5 *Seld.,* 6 *Duer.,* and 3 *Kern.,* are subject to the criticism of undertaking to declare rules of law upon facts not on the face of the instrument. And we are not disposed to accept them as authority; not only because they are far from unanimous, but also because, while recognizing the authority of the case of *Smith & Hoe v. Acker*, 23 *Wend.* 625 (a case which has been approved repeatedly in this state) they seek to evade its force by drawing untenable distinctions. Mortgages which contain express permission to continue the business of the mortgagor, have been repeatedly maintained in Massachusetts and in Maine. *Jones v. Huggeford*, 3 *Metc.* 515; *Barnard v. Eaton*, 2

Cush. 294; Codman v. Freeman, 3 Cush. 306; Mitchell v. Winslow, 2 Story 630; Abbott v. Goodwin, 20 Me. 408; Melody v. Chandler, 12 Me. 282; Stedman v. Vickery, 42 Me. 132.

No court has given any satisfactory reason why such a provision should necessarily vitiate a chattel mortgage, although it is undoubtedly liable to abuse.

The recording law enables all vigilant persons to ascertain the existence of such securities. Many small merchants, especially beginners in business, have no other means of securing their creditors for the stock they purchase, and can only meet their debts out of current sales. If any creditor is likely to be injured by allowing the debtor to dispose of the mortgaged property, it is rather the creditor whose security is thus cut down, than the one who has no claim upon the specific property. To hold that a merchant can not mortgage his goods without closing his doors, would be to hold that no mortgage of a merchant's stock can be made at all. We can not so hold until the statutes declare a new rule.

It is undoubtedly true that frauds may be practiced under the protection of chattel mortgages, by reason of the difficulty attending creditors who can not levy upon a mortgaged stock. But, if other property subject to levy can not be found, a court of equity would find no difficulty in reaching the case. Any equitable interest can be thus reached, and, whatever may be the limits attached to the rights of a mortgagor of chattels, after a mortgagee has seized them (a question which need not be discussed here) there can be no doubt of the right to redeem at any time before the mortgagee has acted, and a court of equity may not only reach and prevent a fraud, but it will compel parties to have their claims marshaled or enforced so as to save the interests of all concerned. If justice fails there, it will be for want of proof, and not for want of power.

We have disposed of the case upon the hypothesis that

the mortgage was properly subject to the conditions alleged by the defendants. We have done so, in order to decide a question which is frequently appearing. But inasmuch as the mortgage in controversy was given to secure a debt already overdue, even if a permission may be inferred to carry on business until interrupted, there is nothing in the mortgage to prevent the immediate assumption of possession by the mortgagee. The permission to remain was therefore a mere matter of forbearance, and not of contract. And in the evidence before us, we find no proof that when the mortgage was made, the defendants were creditors. For want of proof of this kind the plaintiff, in *Williston v. Jones*, 6 *Duer*, 504, was nonsuited, and we think very properly. The case therefore is not even within the New York decisions. The decree must be affirmed with costs.

MARTIN CH. J., and CHRISTIANCY J., concurred.

MANNING J., dissenting.

A reversal of the decree is asked on two grounds: First, that the chattel mortgage, in law, is void on its face as to creditors. Second, that it is fraudulent in fact, and is therefore void as to them.

The mortgage purports on its face to be given by Bidwell & Son, to secure complainant as indorser of two promisory notes for them — the notes being past due at the time. Bidwell & Son grant, bargain, and sell, unto complainant, all and singular their goods, wares and merchandise following, to wit: all and entire their stock of goods in the store now occupied by them, situate on the west side of Canal street, in the city of Grand Rapids. To have and to hold all and singular the said goods and chattels unto the said party of the second part forever; said goods and chattels now remaining and continuing in the possession of the said parties of the first part, in the store aforesaid. Provided always, and these presents are upon this express.

condition, that if the said parties of the first part shall and do well and truly pay, or cause to be paid, to the said party of the second part, the sum of $983 80-100, the amount of the said notes, or should otherwise cause said notes to be paid and satisfied, so that complainant should suffer no loss, expense, or costs, by reason of Bidwell & Son's delay to pay them, then the mortgage to be null and void. "But in case of judgment rendered on said notes, and execution issued thereon, damages, interest and costs thereon shall not, during the life time of the execution or executions, be fully paid, or if the said parties of the first part shall sell and dispose of said goods and chattels, otherwise than in the ordinary course of their usual business, or assign the same to secure the payment of their just debts, without preferring the said Gay before any and every other creditor or creditors, then and from thenceforth" it should be lawful for complainant to take possession of the goods, and advertise and sell them, as provided in the mortgage.

Complainant never took possession of the goods under the mortgage.

A mortgage, at law, is a conveyance of the legal title to real or personal property, as security for a debt, or for the performance of some act by the mortgagor or a third person. Whatever the form of the instrument, if the legal title does not pass by it, it is not a mortgage at law, whatever it may be in equity. Tested by this definition of a mortgage, and the rule of construction that requires the whole of an instrument to be looked to for the intention of the parties, and such a construction to be given to it as will give effect to that intention, and the instrument before us called a mortgage is not a mortgage. The most that can be claimed for it at law, or in equity, is that it is an agreement empowering complainant, in a given contingency, to take possession of, and sell certain property mentioned in it, for a specific purpose, if it should not previously have been sold by Bidwell & Son in the prosecution of their

business: or perhaps that it is an agreement that it is to become a mortgage on the happening of the contingency.

The intention of the parties is too clear to be mistaken. It was not designed to vest the legal title of the property in complainant; but to authorize him, on the happening of either of the contingencies mentioned, to take possession of that part of it that had not been sold by Bidwell & Son, and advertise and sell it to indemnify complainant, or to pay the judgments on the notes indorsed by him. No other construction, I think, can be given to the instrument without doing violence to its terms, and defeating the intention of the parties. By declaring, as it does, that if Bidwell & Son shall sell and dispose of the goods and chattels, otherwise than in the ordinary course of their business, complainant might take possession, it shows the understanding and intention of the parties was that Bidwell & Son should go on selling the property in their own right, and applying the proceeds to their own use, the same afterwards as they had done before. There is nothing making them the agents of complainant, or requiring them to pay the proceeds to complainant, or to apply them in payment of the debts complainant was holden for. If I am correct in this, on what principle can the agreement between them be called a mortgage? It is the legal effect of an instrument that gives it its character; and there is not any thing in the one before us, to prevent Bidwell & Son selling the whole of the property, if they could, before complainant would be entitled to the possession.

To say the agreement is a mortgage, and that complainant had a right to take possession under it at any time, is to mistake the form of the instrument for its legal effect, deprive Bidwell & Son of their rights under it, and give complainant greater rights than he stipulated for.

It may be objected to the views I have expressed, that the parties use the words "grant, bargain and sell"

in the present tense; ,but, as I have already said, these words must be so construed as to give effect to the intention of the parties, to be gathered from the whole instrument. —*Jackson v. Myers*, 3 *Johns.* 388; *Ives v. Ives*, 13 *Johns.* 235. In the first of these cases, Kent Ch. J. says, "The intent, when apparent, and not repugnant to any rule of law, will control technical terms; for the intent, and not the words, is the essence of every agreement."

It may also be said, it is as clearly the intention of the parties the property should not be subject to attachment, or execution, against Bidwell & Son, as that it might be sold by them in the usual course of their business. This is true; but the law will not give effect to this part of the agreement, for it is in violation of the Statute of Frauds, which declares all conveyances and transfers of property, with intent to hinder, delay, or defraud creditors, void as to them. It may well be asked, whether the sole object of the parties was not to prevent the creditors of Bidwell & Son making their debts of the property in question? Was security the object? The fact that Bidwell & Son were to go on with their business, selling the property, and using the proceeds, the same thereafter as before, repels such an idea. Security on property implies a right in, or lien on, the property.

I agree with Judge Mullet (see his opinion in *Griswold v. Sheldon*, 4 *Comst.* 580) in holding such an instrument is not a mortgage, and with Judge Read, in *Collins v. Myers*, 16 *Ohio*, 555, who says, "A mortgage upon a specific article, with possession and power of disposition left in the mortgagor, is in truth no mortgage at all; it is no certain lien. The power to hold possession and dispose of the property, is inconsistent with the very nature of a mortgage."

If we call it a mortgage, the intent to hinder and delay creditors, and not security, in the proper sense of that word, is none the less manifest. Hence, such a mort-

gage has been held fraudulent and void as to creditors, by the Supreme Court of New York, in *Edgell v. Hart*, 13 *Barb.* 380, and by the Court of Appeals of that state in the same case, 5 *Seld.* 213, and in the case of *Griswold v. Sheldon*, 4 *Comst.* 580. And in *Brooks v. Wimer*, 20 *Mo.* 503, a deed of a stock of goods to a trustee, for the benefit of creditors, which on its face reserved to the grantor the right to sell the goods in the usual course of his business, until default made in the payment of the debts intended to᾽ be secured, was held, as a matter of law, void against creditors.

In New York, as in this state, the fraudulent intent is made by statute a question of fact. And it has been held there, as well as by this court in *Pierson v. Manning*, 2 *Mich.* 445, that when the fraudulent intent appears on the face of the instrument, it is a question of law for the court to decide, and not of fact for a jury. In *Brooks v. Wimer* the court say, "fraud is a question of fact for a jury, except in [those cases in which, from the very face of the instrument, the conveyance is fraudulent under the statute.

*Pierson v. Manning* was an assignment for the benefit of creditors. But there is no difference between such assignments, and chattel mortgages, or other conveyances. The statute applies to all conveyances to hinder or defraud creditors.

The construction and legal effect of written instruments have always been regarded as questions of law. The books are full of cases in which they have been declared void *in toto*, or as to creditors, for matter appearing on their face, and the statute was not intended to take such questions from the court and refer them to a jury.

In *Oliver v. Eaton* [*ante p.* 108] and *Bagg v. Jerome* [*ante p.* 145] this question was not before us, but we were asked to declare the chattel mortgage, in each of those cases, void for matters appearing outside of the mortgage.

This we held we could not do under the statute. In the last case the following language is used, in speaking of the statute: "When the instrument on its face is one the law will not sanction, against creditors, it is the duty of the court to pronounce it fraudulent as to them; but the court will not look to matters *dehors* the instrument for that purpose. In such case the fraud, if any, does not consist in the instrument itself, but in the abuse of it, or in using it for purposes at variance with what it declares on its face.

There are two kinds of fraud—fraud in law, and fraud in fact. When courts say an instrument is fraudulent on its face, or in law, I do not understand them to mean it is made with a corrupt intent, but that it is an instrument the law will not sanction, or give effect to, as to third persons, on account of its susceptibility of abuse, and the great danger of such contracts being used for dishonest purposes. Hence, in many cases, the law has shaped and given form to contracts; on which form their effect or legality is made to depend.

The law of this court as to chattel mortgages, is, that the mortgagee may take possession at any time, unless there be an express stipulation to the contrary; and that the mortgagor has no right in the mortgaged property that can be taken and sold on an execution.—3 *Mich.* 110; 4 *Mich.* 295. Before going further, it seems to me the court should inquire into the probable consequences of permitting a new feature to be engrafted on such mortgages, by which the mortgagor may sell and dispose of the property in his own right, and for his own benefit, the same after he has given such mortgage as before. Will not one of these consequences be, that a merchant with a stock of six thousand dollars, by mortgaging it for two or three thousand dollars, may go on selling it, putting the money in his pocket, while the sheriff with an execution against him stands at the door, in defiance of the officer?

GAY v. BIDWELL.

The courts in Massachusetts and Maine have probably gone further than any others, but I doubt whether a case can be found in either of those states, going the length it is necessary to go to sustain the mortgage before us.

In *Jones v. Huggeford*, 3 *Metc.* 515, the mortgagor was authorized to sell some, not all, of the goods, provided he purchased like goods of like value, to be put into the store, and there to be kept, and the sale thereof to be faithfully applied to the payment of the mortgage debt; showing clearly the intention of the parties was that the title to the property should pass at once, and not on a contingency thereafter to happen.

In *Mitchel v. Winslow*, 2 *Story*, 630, which in other respects differs from the case before us, the instrument had become a mortgage in fact by the party having taken possession of the property under it, and it was an assignee in bankruptcy of the grantor who was contesting it, who, Judge Story held, had no greater rights than his assignor.

Other cases cited on the argument, for reasons appear-ing in them, seem to me as inapplicable as those I have mentioned.

The branch of the case I have been considering presents two questions. First, was it the intention of the parties the title should pass on the execution of the instrument? Second, will the court sustain such an instrument, as a mortgage? Either of these questions answered in the negative disposes of the complainant's case; and I think both should be answered in the negative.

I think the decree should be reversed, and the bill be dismissed.

*Decree affirmed.*