James O. Shackelford, J.,
delivered the opinion of the Court.
This bill was filed in the Chancery. Court at Nashville, against F. E. Perrin, and a part of his creditors. The facts necessary to be stated to understand the principles involved, are substantially as follows:
On the 13th of September, 1865, E. E. Perrin and C. A. Lewis were engaged in a drug business in the City of Nashville, under the name of Lewis, Perrin & Co. On that day, F. E. Perrin borrowed for the firm, of James G. Parkhurst, $2,080; to secure the payment, they executed a mortgage to the said Parkhurst, by which they sold and transferred their entire stock of drugs, medicines, groceries and furniture, in the storehouse occupied by the firm, in the city of Nashville, and authorised him to take possession of the property whenever he deemed himself insecure in its remaining *137 in tbe possession of tbe firm. The condition of the mortgage is as follows: “The sale is made to secure to tbe said Parkhurst, tbe payment of tbe above sum of money, this day loaned to Lewis, Perrin & Co., which said sum is to be paid in sixty days from tbe date of tbe instrument, according to tbe terms of a note bearing even date. In case said sum of money is paid, then this sale and transfer to be void, otherwise, tbe said Parkhurst is to sell tbe stock of goods at public or private sale, and after paying tbe said debt and expenses of sale, tbe surplus to be paid over to Lewis, Perrin & Co. Said Lewis, Perrin & Co., are to continue their daily sales from said stock, unless said Park-burst deems it necessary for bis protection, to take possession of tbe same as aforesaid.”
This paper was signed in the firm name, by E. E. Perrin, and duly acknowledged and registered. Af-terwards, on tbe 10th day of October, 1865, Gr. A. Lewis sold out bis interest in tbe firm, to F. E. Per-rin, for tbe sum of $3,000, be to take bis interest and pay all tbe liabilities of tbe firm. Afterward, on tbe 8th day of February, 1866, F. E. Perrin assigned and conveyed to S. Auback & Co., by mortgage, tbe goods and chattels described in tbe schedule annexed to tbe conveyance, being tbe drugs and medicines in tbe storehouse in tbe City of Nashville. Tbe conveyance recites: “To bold tbe same to tbe use of tbe said S. Auback & Co., their assignees, etc. Provided, nevertheless, if the said Perrin shall pay to tbe said Auback & Co., tbe sum of $3,600, together with tbe interest from tbe 1st of July, 1865. It being further distinctly *138 understood and agreed between tbe parties Hereto, if any creditor of said mortgagor shall seize, or attempt to seize said property, or, if said Perrin shall sell or encumber, or attempt to sell or encumber said property, or be sued, or if said mortgagees shall become fearful that their interests are being endangered, then, in such case, the said mortgagees may, at their option, enter upon and take possession of said property, and hold and dispose of the same, until whatever may then be due shall be fully paid, then the conveyance to be void, otherwise to remain in full force and effect. The goods in the schedule valued at $16,000.”
This paper was acknowledged on the 8th day of February, 1866, in the City of Cincinnati, before a commissioner of the State of Tennessee, and was noted for registration in the Register's office of Davidson County, on the 28th of February, 1866, and was registered March 21st, 1866. From the testimony, the paper was filed when noted, but withdrawn, and not returned until about the date of its registration.
On the 12th day of March, 1866, F. E. Perrin made and executed a conveyance to James Hickman, of his entire stock of drugs and medicines in his storehouse in the City of Nashville, and all the fixtures thereto belonging.
The conveyance recites: “Upon the condition that James Hickman had become his indorser on a note executed by F. E. Perrin, payable to C. P. Westcott, for the sum of $5,000, dated the 12th day of March, 1866, and due six months after date, the note to be paid out of the proceeds of the sales of the store; a *139 sufficient amount of tbe fund only to be retained by tbe said Perrin, to keep up tbe stock. If tbe said Per-rin shall have paid tbe said note wben it becomes due, then tbe conveyance to be void, otherwise to remain in full force. If the said note is not paid by tbe said Perrin, wben it becomes due, the said James Hickman, or his assigns, is authorized to enter into and take possession of tbe drug store, and sell an amount sufficient to pay the debt.”
This conveyance was acknowledged before tbe Clerk of tbe County Court, on the 12th of March, 1866, filed with tbe Register on that day, and registered on tbe 15th of March, 1866.
There is nothing in the record to show Hickman had any notice of the execution of the conveyance to S. Auback & Co.
On the 19th of April, 1866, Lewis, a creditor, filed his original attachment bill in the Chancery Court at Nashville, against Perrin, in which he alleged that he was about fraudulently to sell and dispose of his property, and praying an attachment, which was awarded and levied upon the goods, which were replevied by Perrin, giving Hickman as security. On the 21st of April, 1866, Scheff & "Wells, as creditors, filed their original attachment bill against Perrin. The goods were levied upon and replevied by Perrin, giving Hickman as security. Wilson, Peters & Co., creditors of Perrin, filed their attachment bill against him on the 27th of April, 1866, in which they made Parkhurst a party. An attachment was prayed for and issued, and the goods were attached. On the same day, James Hickman, the com *140 plainant, filed this attachment bill, in which he exhibits his conveyance; avers the fact of the suing out the various attachment bills; the seizure of the property; and avers that he had become the surety on the re-plevin bond; that at the time he became such, he did not know Perrin was indebted; he makes all persons in interest, parties to his bill. He prays the property be attached and sold, and the right of the parties settled under the several mortgages and attachment bills. An attachment was awarded by the Chancellor, and the property placed in the hands of a receiver.
On the 30th of April, 1866, Woods, a creditor of Perrin, filed his attachment bill. On the same day, James G. Parkhurst, to whom the first mortgage was executed, filed his bill, in which he avers that he has the prior lien. Various other attachment bills were subsequently filed. S. Auback & Co., were made parties to all of the several bills.
At the May Term, 1866, an order was made consolidating the several causes, and by consent, the drugs, medicines and goods attached, were ordered to be sold.
It appears from this record, the debts upon which the attachment suits were based, were all contracted subsequent to the execution of the mortgage to Park-hurst. That the sum specified in his deed, was advanced to the firm by way of loan before Lewis retired, and for the benefit of the firm.
Lewis, in his bill does not make Parkhurst a party, or assail the validity of the transaction.
We think from the testimony in the record, the *141 debt due to S. Auback & Co., is sufficiently established. Tbe debt of $600 was for goods-, sold to Perrin, the $3,000 was for the unexpired term in the storehouse, and the advantages of the location, as is termed in the contract, “good will of the house.”
The conveyance to Hickman was for the purpose of securing him as indorser for $5,000; and there is no question as to the bona fides of the transaction.
The causes were heard at the - Term, 1867. The Chancellor was of opinion that the several conveyances were fraudulent as to creditors, there being a reservation on the face of the conveyance for the benefit of the bargainor. They were set aside, and the fund distributed according to priorities in filing the bills. Lewis being a member of the firm of Lewis, Perrin & Co., at the time of the execution of the note to Parkhurst, the amount due him was decreed to the satisfaction of the debt of Parkhurst. S. Auback & Co., appealed from the decree of the Chan-celler to this Court.
Hickman and Parkhurst have filed the record for error, consequently the whole case is before us.
The questions presented for our consideration, arise upon the validity of the several conveyances in the record, and we will consider them in the order in which they were registered.
It is insisted, the conveyance made by Lewis, Per-rin & Co., of the 15th September, 1865, to secure said Parkhurst, is fraudulent and void as to creditors, by reason of the stipulation that the said Lewis, Perrin & Co., were to continue their daily sales from said *142 stock, etc.; and in support of this possition, various authorities have been cited: 2 Swan, 208; 7 Hum., 181; 1 Head, 37; 3 Head, 580. Upon an examination of the authorities cited, they do not sustain the position assumed. There is nothing in this record to show there was any actual or intentional fraud; upon the reverse, the testimony shows, the money was loaned on the day specified, and the conveyance put to registration.
The debts of Perrin, in which the several attachment bills have been filed, were contracted "subsequent to the execution of the mortgage to Parkhurst. They had constructive notice of the existence of this mortgage, and have no right to complain of the transaction being fraudulent, unless they can show the object and intent of the deed, was, to perpetrate a fraud and avoid subsequent indebtedness.
The principles settled in the case of Alley vs. Connell and others, 3 Head, 580, has no application to this class of cases.
In that case the deed was fair on its face, and purported to be for a valuable consideration. From the testimony, it appears there were suspicious circumstances connected with the transaction; and a distinction is drawn by the Court, in such cases, between deeds, fraudulent in fact and fraudulent in law.
The Court says: “A distinction must be made between actual, intentional fraud, and constructive fraud in law; a conveyance fraudulent in fact, is absolutely void, and is not permitted to stand for any purpose, of reimbursement or indemnify; but it is otherwise with a deed which is in one sense, constructively fraud *143 ulent.” In that case, the deed was held good for the amount paid by the grantee. Under the well settled rules of law in this State, where a general assignment has been made by an insolvent debtor, to provide for the payment of his debts, if there is a reservation of an interest to the debtor, that avoids the deed, and it is held to be fraudulent and void; but it is different in the class of cases under consideration. This conveyance was operative between the parties; and the title passed the property as between the parties. A mortgage is in general valid without change of possession. It is settled, a creditor who does not show that he was such at the date of. the mortgage, is not in position to attack it as fraudulent, on the ground that it allows the mortgagor to remain in possession and dispose of the property: 2 Hilliard on Mortgages, 402; 7 Mich., 519.
We think the transaction was fair and bona fide; and that is the question at issue on this conveyance. The money was advanced as a loan, the conveyance was given to secure the payment, the transaction was fair and honest; the amount of property upon which the mortgage was given, consisted of the entire stock; no creditors appearing here, existed at the execution of the deed, and who can complain? There is nothing to show any fraudulent intent as to future indebtedness; and 'though the parties were permitted by the express terms of the deed, to sell the property embraced in it, retaining sufficient to pay the debt, this does not show a fraudulent intent as to subsequent creditors. A man has the right to borrow money, and 'to secure the pay *144 ment, he may give a lien on any property that will satisfy tbe lender, and tbe giving a mortgage upon property more than sufficient to pay tbe money loaned, is not, of itself, evidence of fraud disconnected with other facts.
The question turns upon the intention of the parties. If it appears from the deed, the object and intention was to hinder and delay existing creditors, or it appears from the fads that it was fraudulent in fad, then it would be void; but in the absence of such stipulations in the deed, making it fraudulent and void, or a fraud in fad, which must appear from the proof, the conveyance will be held good; and in conveyances of this character, the parties have the right to show the transaction was bona fide; and if so, it will be held good: 17 Iowa, 89; 7 Mich., 522.
In Hilliard on Mortgages, vol. 2, p. 404, the question is discussed, and we think the rule correctly stated. The writer says: “Cases may present themselves where the form of the conveyance, and the stipulations of the contracting parties, are of such obviously illegal character and purpose, that it may be the duty of the Court to pronounce them fraudulent in law, and wholly ineffectual, but in general, whenever the terms and stipulations of a contract, are, by possibility, compatible with good faith, and have upon the face of them the essential elements of a legal contract, the question of fraudulent intent and want of good faith is to be submitted to a jury.”
With us, in our courts of Chancery, the questions of fact are determined by the Court. These foregoing principles are sustained also. by the following authori *145 ties: 7 Hump., 310, 191; 3 Metcalf, 515; 3 Cushing, Scodman vs. Freedman; 42 Maine, 132.
¥e are, therefore, of opinion, that the mortgage executed by Lewis, Perrin & Co., to Parkhurst, is not fraudulent in fact, nor in law, but a valid and subsisting security for the money advanced.
Seco7id, It is insisted, the deed of conveyance from' Perrin to Hickman, of the 12th of March, 1866, is fraudulent and void by reason of the stipulation that the note is to be j)aid out of the proceeds of the sales of the store, and a sufficient amount only of the fund to be retained by the said Perrin, to keep up the stock.
This clause, it is insisted, is a reservation of a use to the grantor, and thereby vitiates the whole deed. By the terms of the deed, the entire property was conveyed to Hickman. The note had six months to run. The proceeds of the sales were to be applied to the payment of the debt, except sufficient to keep up the stock. This, under a proper construction of the deed, is not a reservation of a use to the bargainor.
By the terms of the deed, the property was to remain in the possession of the mortgagor, and the proceeds of the sales to be applied to the payment of the note.
To hold that a merchant cannot mortgage his goods without closing his doors, would be to hold that no merchant could mortgage his stock. The general principles of law stated in reference to the deed to Park-hurst, apply with full force to this deed. "We must, therefore, examine and see if there is, or was, any fraudulent intent on the part of Perrin, in the execution of this mortgage. He wished to borrow money *146 to carry on his business. Hickman is willing to aid him if he can be secured. The authority to sell, and pay the note, retaining a sufficient amount to replenish the stock, did not permit Perrin to use the same to his own use, and was not such a reservation of an interest as would vitiate and taint the deed. It was the intention of the parties that the proceeds should be invested in other medicines, that would be subject to the lien of the mortgage. In a case of general assignment by an insolvent debtor, of his property to creditors reported in 3 Cold., 191, a power was given to a trustee, to re-invest the funds to keep up the stock. It was held, it was a proper discretion, and it was no evidence of a fraudulent intention.
If a mortgagor sells goods, and with the proceeds, as provided in this deed, replenish the stock by purchase, the goods last purchased, represent the first, and are substituted for them, and are. equally subject to the lien of the mortgage: 7 Mich., 522.
There is nothing on the face of this deed that will authorize us to declare it void by reason of the provisions giving the mortgagor the right to re-invest a part of the proceeds of sales in other goods. If not fraudulent in law, is it fraudulent in fact?
"We are satisfied that it is not. The facts show, beyond doubt, the honest intention of the parties, and it is a settled rule, never to presume a dishonest meaning, if an honest one can be inferred, and is consistent with the whole tenor .of the instrument: 6 Mich., 329.
"We are, therefore, of opinion, that the deed of Per- *147 rin to Hickman, is valid and subsisting security for tbe note specified.
Third, It is insisted, tbe conveyance from Perrin to S. Aubaek & Co., by reason of tbe stipulations and reservations therein, is fraudulent and void as to tbe creditors.
This conveyance does not differ essentially from tbe one to James Hickman.' Tbe principles stated in reference to that conveyance, are applicable to this. This conveyance was made to secure tbe notes of $3,000, and tbe debt of $600. Tbe debts were bona fide, in tbe opinion of tbe Court, and due and owing. By tbe terms of tbe deed, the mortgagees bad tbe right to tbe possession of tbe property at any time. Where no stipulation is made to tbe contrary, tbe mortgagee, in a chattel mortgage, is entitled to tbe possession, and tbe possession of tbe mortgagor is consistent with the instrument. Stipulations of this extraordinary character, contained in a mortgage, may tend to cast suspicion upon tbe good faith of tbe transaction, or in connection with other circumstances, may amount to proof of fraud in fact, but do not, in themselves, and in tbe absence of fraudulent intention, render tbe deed void in law: 9 Hump., -; 3 Mich., 111; 12 Metcalf, 310.
It was held, in tbe case of Wiley vs. Lashlee, 8 Hump., 717, “where an absolute bill of sale is executed for personal property, and tbe property, remains in possession of tbe vendor, tbe presumption of fraud which arises from this inconsistency, is removed by proof that tbe bill of sale, though absolute on its face, was, in fact, a mortgage by parol defeasance.”
*148 Such being the settled principle of the law in such cases, the question is — Was the mortgage fair and bona fide? or was it fraudulent in fact?
We are satisfied, from the testimony, that the transaction was bona fide; and upon what principle can it be declared fraudulent? Not from anything appearing on the face of the deed; there is no reservation of an interest to the mortgagor; there is nothing on the face of the deed, from which we can infer a fraudulent attempt to hinder and delay the creditors of the mortgagor.
. The rules of law applicable to general assignments by insolvent debtors, for the payment of their debts, do not apply to this class of mortgages. This is a conveyance of goods of the value of $16,000. The party is permitted to retain the possession. The mortgagee has the right at any time, to take possession, and sell the property and pay the debt. The transaction, we think, was an honest one, and under the well-settled rules of law in this State, we think the deed valid, and a subsisting security for the payment of the debt.
This conveyance being valid, the question arises as to the priority of lien between this deed and that of Hickman. The conveyance of S. Auback & Co., is dated the' 8th of February, 1866, and acknowledged before a Commissioner of the State of Tennessee, in the State of Ohio. It was forwarded and noted by the Register of Davidson County, on the 28th of February, 1866, and withdrawn from the office on the day noted by the agent of Auback & Co. The conveyance to James Hickman, the complainant, was made, acknowledged and filed with the Register, on the 12th of March, 1866, and registered *149 a few days thereafter. There is nothing in the statute giving the noting of a deed any priority when noted, if withdrawn before registration by the party taking a beneficial interest under it. The duty of the Register is, to put it upon the books in the order in which the deeds are filed, and the noting upon his books is the evidence of the filing; but where the deed is withdrawn by the party or his agent, the priority is gone, and it only takes effect from the date of its return to the office of the Register.
The deed to Hickman having been registered before that to Auback & Co., it follows, therefore, the conveyance to Hickman has priority, and will be paid after the Parkhurst debt.
It is insisted by Lewis that he has a lien upon the partnership effects for the payment of his claim. We do not think so. The purchase of Perrin was a sale of his interest in the stock. There was no reservation of a lien, and the law does not imply one. He stands as any other creditor.
It is insisted that Hickman, having become the surety of Perrin on the replevin bonds for the forthcoming of the property, is liable. That question does not arise, as the validity of the deeds have' been sustained.
It follows, therefore, the decree of the Chancellor must be reversed.
Hickman having- brought, by his bill, all parties having an interest, before the court, and their rights having been determined, the fund will be paid out, first, on the debts secured by the several mortgages, as settled in this *150 opinion. The balance will be paid on the several claims in the several attachment bills, according to priority of filing.