## Case No. 1,844.

### BRETT v. CARTER.

[2 Lowell, 458;[1] 2 N. Y. Wkly. Dig. 331; 14 N. B. R. 301; 22 Int. Rev. Rec. 152; 3 Cent. Law J. 286; 13 Alb. Law J. 361; 10 Am. Law Rev. 600.]

District Court, D. Massachusetts. Dec., 1875.

MORTGAGE OF CHATTELS — STOCK IN TRADE — VALIDITY — LEAVE TO SELL — AFTER-ACQUIRED CHATTELS.

1. The question of fraud in a mortgage of chattels, which permits the mortgagor to retain possession of the chattels, and act as apparent owner, is one of fact for a jury to decide. Such a mortgage is not void upon its face by the law of Massachusetts, nor by the common law.

[Cited in Miller v. Jones, Case No. 9,576; Argall v. Seymour, 48 Fed. 549; Morse v. Riblet, 22 Fed. 502; Hills v. Stockwell & Darragh Furniture Co., 23 Fed. 436.]

2. A mortgage of future additions to a stock of goods in a particular shop is a valid mortgage of such goods, as fast as they are put into the shop by the mortgagor.

[Cited in Miller v. Jones, Case No. 9,576.]

Bill in equity by [W. H. Brett] the assignee in bankruptcy of one Osborne N. Sargent, against [H. H. Carter] a mortgagee of the stock of stationery and other similar goods. It apeared that Sargent bought out the stock in trade of the defendant Carter, as carried on by him at a certain place, in November, 1874, and on the same day gave back a mortgage to secure the payment of the purchase-money by instalments, represented by promissory notes extending over a period of four years. The mortgage conveyed the stock "and any other goods which may from time to time, during the existence of this mortgage, be purchased by the grantor and put into said store to replace any part of said stock which may have been disposed of." Among the covenants was one, that, if the stock should be diminished "faster that said sum hereby secured is paid, said grantor is to furnish further security for said sum, whenever required' by said grantee." Two of the notes were duly paid, but one that came due in November, 1875, was not paid in full, and the defendant demanded further security, and a mortgage was given of such stock as had been acquired during the year. This mortgage was given about two weeks before the petition in bankruptcy was filed, and the theory of the bill was that it was a preference. The complainants afterwards asked leave to amend, and allege the first mortgage to be void on the ground that the mortgagor was tacitly permitted to sell the goods in the ordinary course of his trade, The defendant insisted that both mortgages were valid. [Decree for defendant.]

J. B. Richardson, for plaintiff.

C. K. Fay, for defendant.

LOWELL, District Judge. The court of appeals of New York decided, by a bench which was equally divided in opinion, that a mortgage of chattels which permits the mortgagor to continue in possession and to sell the goods in the ordinary course of business, is void on its face, as mere matter of law: Griswold v. Sheldon, 4 Comst. [4 N. Y.] 581. This decision has had a remarkable following, and its doctrine appears to have become the settled law of New York, Ohio, and Illinois. It is not the law of England, Maine, Massachusetts, Michigan, or Iowa; in several states it has not been passed upon. But as this new doctrine, or, rather, revival of an old one, has been said by Mr. Justice Davis, of the supreme court, to be so general and just that it may be presumed to be the law of Indiana, in the absence of express and unambiguous decisions of the courts of that state to the contrary, and as I venture to doubt both the generality and the justice of the doctrine, it becomes me, with all the respect I feel for that opinion, to state my reasons for not acceding to it. If the rule, whichever way it may be, were a settled rule of property in Massachusetts, inquiry into its history or justice would be unnecessary; but although I have no doubt my decision will accord with the law of Massachu-

---

[1] [Reported by Hon. John Lowell. LL. D., District Judge, and here reprinted by permission.]

setts, I have not found a case in this state in which the decisions in New York were reviewed, and it is possibly still a question for discussion.

I had supposed it to be well settled,—after much debate and conflict of opinion, certainly, but substantially settled,—that when a vendor or mortgagor was permitted to retain the possession and control of his goods and act as apparent owner, the question whether this was a fraud or not was one of fact for the jury, excepting under a peculiar clause of the bankrupt law of England. It is so pronounced by Mr. May, in his valuable treatise on Voluntary and Fraudulent Conveyances (page 126), and by the cases he cites; and by the learned editors, both English and American, of Smith's Leading Cases, notes to Twyne's Case (volume 1, p. 1, etc.). By the law of England, as I understand it, there are no constructive or artificial frauds, or, if the term is preferred, frauds in law, remaining, excepting, 1st, such as are expressly made so by statute; as, for instance, when a bankrupt retains the order and disposition of goods, as apparent owner, with the consent of the true owner. We have not adopted this part of the bankrupt law, as was somewhat emphatically said in a late case in the supreme court: Sawyer v. Turpin, 91 U. S. 114, 121; or, 2d, where the act is necessarily a fraud on creditors; as where an insolvent person gives away a part of his estate for no valuable consideration, or the whole of it to one antecedent creditor. These, to be sure, are examples; but very few others could be adduced; and I understand the true law both here and in England to have been, until lately, that a conveyance for a valuable present consideration is never a fraud in law on the face of the deed, and, if fraud is alleged to exist, it must be proved as a fact; and that was the law even before registration was required for the benefit of persons dealing with the mortgagor.

It is very strange that after our legislatures have met the difficulties of Twyne's Case, by requiring registration, which gives not only constructive, but in most cases actual, notice of mortgages, and when many of them have provided that fraud shall be a question of fact for the jury, the decisions which I have cited, and others following them, should have reverted to the harsher doctrine which had already grown obsolete before the laws provided any notice at all, or any rule of evidence about fraud.

It is plain that such a doctrine virtually prevents a trader from mortgaging his stock at any time for any useful purpose; for if he cannot sell in the ordinary course of trade, or only as the trustee and agent of the mortgagee, he might as well give possession to the mortgagee at once and go out of business. In this case he never could have begun business, for the whole stock was supplied by the defendant.

I would refer in this connection to the very able opinions of Judge Dillon in Hughes v. Cory, 20 Iowa, 399, and of Judge Campbell in Gay v. Bidwell, 7 Mich. 519, in which they refuse to follow the decisions in New York, and give reasons for that refusal, which, in my judgment, are unanswerable.

If it be said that this is one of those cases in which fraud is a necessary result of the deed, all I can say is that this brings us to an ultimate fact of observation and experience; and I am unable to see the necessity. Indeed, it is much more difficult for me to see how creditors can be defrauded in such a case, when they are told in the deed itself that the debtor has no credit, and no property that he can call his own; than that the mortgagee is most outrageously defrauded by such a rule, which devotes his property to the payment of another person's old debts the very instant that he has parted with the possession, taking back a security which is admitted to be honestly given.

Take this very case as an illustration. It is admitted there was no fraud in fact; that the trader's whole stock was supplied by the defendant; that the mortgage shows that all the stock, present and future, is hypothecated, not as a cover or blind, for there was none, but to the payment of a certain debt by certain instalments. No offer is made to prove that any one was deceived, or even was ignorant of the mortgage; but I am asked to find fraud in law when I know, and it is admitted, there was none in fact. Besides cases already cited, see Briggs v. Parkman, 2 Metc. [Mass.] 258; Jones v. Huggeford, 3 Metc. [Mass.] 515; Barnard v. Eaton, 2 Cush. 294; Cobb v. Farr, 16 Gray, 597; Mitchell v. Winslow [Case No. 9,673]; Abbott v. Goodwin, 20 Me. 408.

The second point in this case is no less interesting than the first. By the mortgage, the stock that shall be put into the shop by the mortgagor is included in the conveyance. It is undoubtedly the law of courts of equity, as cases presently to be cited will show, that after-acquired chattels definitely pointed out, as, for instance, by reference to the ship, mill, or place into which they are to be brought, may be lawfully assigned as security. The common law recognizes such transfers of land by way of estoppel, and of chattels when they are the produce of land or of chattels already owned by the transferrer, but not of future chattels simpliciter, unless there be some novus actus interveniens, after the chattels are acquired; that is to say, either some new transfer, or possession taken under the old. It may be cause of regret that the law should be different in the courts of common law and equity; but this is of no importance in bankruptcy, because it has been the law for a great while that an assignee in bankruptcy takes only the beneficial interest of the bankrupt; and the courts of law have admitted equitable defences, such as equitable liens, &c., to be

set up in such cases, years before they had power by statute or usage to admit equitable pleas in ordinary controversies; and it was every day's practice to find these courts passing upon equitable titles in behalf of a defendant, which they professed to know nothing about, and certainly could not deal with, if relied on by a plaintiff. Such was and is the law, and a very just law, as far as it goes.

But granting the rule in equity to be that after-acquired chattels may be mortgaged, the point which has given me most difficulty is, whether such is the law of Massachusetts. I suppose that the federal courts, in all matters of title to property, whether real or personal, when there is no question of commercial or maritime or general law, and none of the conflict of laws, are as much bound in equity as at common law by the jurisprudence of the state in which they sit. Or, in other words, I understand that the thirty-fourth section of the judiciary act, making the laws of the state the rule in actions at common law, is declaratory only, and that on both sides of this court I am bound to follow the law of Massachusetts in local questions, and the general law in general questions.

Now, the only decision I can find in equity, in this state, upon this subject, certainly decides very distinctly that even in equity a mortgage of after-acquired chattels is invalid: Moody v. Wright, 13 Metc. [Mass.] 17. In that case the court refused to follow the then recent decision of Story, J., in Mitchell v. Winslow [Case No. 9,673], and relied largely on the dictum of a very distinguished judge, Baron Parke, who said, in Mogg v. Baker, 3 Mees. & W. 195, that there was no such lien in equity. Some years after these decisions were rendered, the house of lords unanimously followed the doctrine of Judge Story, and reversed a decision of Lord Campbell, which had been founded on the dictum already referred to; and Baron Parke concurred in the reversal: Holroyd v. Marshall, 10 H. L. Cas. 191. This was not a new doctrine in courts of equity: See Curtis v. Auber, 1 Jac. & W. 532; In re The Warre, 8 Price, 269; Langton v. Horton, 1 Hare, 549; Douglas v. Russell, 4 Sim. 524; 1 Mylne & K. 428; In re Howe, 1 Paige, 129.

These cases have been repeatedly followed in England, and even more often in this country, and, so far as I am aware, with not a single decision the other way of late years. It is true that a great many of the cases arose upon mortgages given by railroad companies, and some few judges have founded a distinction upon that circumstance. But there is no difference in principle between the mortgage by such a corporation of its rolling-stock not yet in esse, and that by a trader of his future stock in trade in a particular shop. The truth merely is, that from the nature of the former, the large sums which they deal with, and the time at which they must be negotiated, which is before the road is finished, attention was called to the great injustice that would be done in displacing the first mortgage in favor either of general creditors or even of subsequent mortgagees; but similar injustice will be done in all such cases, to the extent of the value involved. The following are some of these decisions: Holroyd v. Marshall, 10 H. L. Cas. 191; Pennock v. Coe, 23 How. [64 U. S.] 117; Morrill v. Noyes, 56 Me. 458; Pierce v. Emery, 32 N. H. 484; Benjamin v. Elmira R. Co., 49 Barb. 441; Philadelphia, etc., Co. v. Woelpper, 64 Pa. St. 366; Phillips v. Winslow, 18 B. Mon. 431; Sillers v. Lester, 48 Miss. 513; Pierce v. Milwaukee & St. P. Ry. Co., 24 Wis. 551.[2]

Considering the decision by Judge Story in this circuit, and the reasons given by the court of Massachusetts for not following it, and the entire consistency of all the recent decisions with Judge Story's views, and the disappearance of Baron Parke's dictum, I am not prepared to say, that if the supreme judicial court were now asked to review their decision in Moody v. Wright, it is at all certain they would not reverse it, and under the circumstances I do not feel bound to hold that that case furnishes a settled rule of property which I must follow. So far from that, I believe that the law of Massachusetts in equity is that a mortgage of after-acquired chattels is valid.

I am of opinion that the mortgage of 1874 created a valid lien in behalf of the defendant upon the stock of goods in the shop at the time of the bankruptcy, and that the mortgage of 1875 does not vitiate this lien. The fixtures, however, which were not mentioned in the first mortgage, cannot be held by the second, because that was given after the bankrupt had become insolvent, to the knowledge of the defendant. Decree accordingly.

---

[2] Mr. Justice Clifford has reaffirmed this doctrine in the circuit court for this district: Barnard v. Norwich & W. R. Co. [Case No. 1,007].