CYRUS CARPENTER & another *vs.* HOWARD SNELLING.

A conveyance of goods absolute in form, and an agreement simultaneously executed by the assignee to reconvey them upon payment of the assignor's promissory note made at the same time for money lent to him by the assignee, constitute a mortgage, as between the original parties.

After breach of the condition of an unrecorded mortgage of personal property the attorney of the mortgagee went, with a keeper, to the premises where it was in use by the mortgagor and his family, and the mortgagor pointed it out and said that he gave possession of it to the keeper in behalf of the mortgagee; after which the keeper continued in charge of it, upon the premises, uninterruptedly, except on one occasion when he was absent for several hours, until it was seized by the officer on a writ of replevin brought against the mortgagee by the assignees in insolvency of the estate of the mortgagor. By arrangement with the mortgagor the keeper concealed from the family, during his stay, the purpose for which he was present, and permitted them and the mortgagor to use the property as before. The notice of the proceedings in insolvency was first published three days after the keeper took charge. It was the intention of the mortgagee to remove the property from the premises immediately after taking possession, but he delayed doing so, at first by request of the mortgagor, and, after the proceedings in insolvency were instituted, because the messenger claimed it and refused to consent to its removal. On the trial of the action of replevin, *Held*, that there was a sufficient delivery of the property to the mortgagee and retention of it by him, under the Gen. Sts. *c.* 151, § 1, to entitle him to possession of it as against the assignees in insolvency.

The provision of the U. S. St. of 1866, *c.* 184, § 9, that no instrument or document not duly stamped, as required by the internal revenue laws of the United States, shall be admitted or used as evidence in any court until the requisite stamps shall have been affixed thereto, applies only to courts of the United States.

REPLEVIN by the assignees in insolvency of the estate of George W. Pettes. Writ dated November 21, 1866. Trial in the superior court before *Devens*, J., who made a report thereof substantially as follows:

The notice of the insolvency of Pettes was first published on November 8, 1866, and the assignment of his estate to the plaintiffs was made on November 19. He was the owner of the property replevied except as against such title as the defendant may have acquired by virtue of certain papers, all dated and executed on August 16, 1866, and the transactions under and relating to them. They were: 1. A bill of parcels, signed by Pettes, containing a schedule of the property in dispute, and running as follows: "Howard Snelling, Bought of G. W. Pettes, [here followed the schedule of the property, with an estimate of

**values** of the items, the total being forty-seven thousand two hundred and fifty dollars.] Value received for above." 2. A paper, entitled a " storage receipt," signed by Pettes, as follows: " Received as storage from Howard Snelling certain pictures, engravings, bronzes, statuary, etc., as designated in a schedule given him by me, and such goods subject to his order." 3. A paper, signed by the defendant, as follows: " Whereas I have this day purchased for the sum of fifteen thousand dollars certain pictures, engravings, horses, carriages, bronzes, etc., enumerated in a schedule or bill of the same, I do hereby agree at any time to convey said goods, one and all, back to the party of whom such purchase was made, upon the payment of a note of fifteen thousand dollars, of this date, at thirty days, said note signed by said party and made payable to my order. The two parties to this transaction are Geo. W. Pettes of Jamaica Plain, and Howard Snelling of Boston." 4. A promissory note signed by Pettes for fifteen thousand dollars payable thirty days after date to the order of the defendant.

The first and second of these papers each bore an internal revenue stamp of the denomination of two cents; the third, one of five cents; and the fourth, one of seven dollars and a half.

The note was given for money lent by the defendant to Pettes. No part of the debt secured by these papers was ever paid. It was not contended that Pettes was insolvent at the time of their execution and delivery, or that there was any fraud between him and the defendant.

At the time the papers were delivered, the property was in use by Pettes and his family, in his house and stable in West Roxbury, and so continued until the service of the writ. None of the papers were ever recorded; nor was any possession of the property taken by the defendant until November 5; and then only as follows: On that day his attorney, with one John B. Neale, went to the house of Pettes with the bill of parcels above described; and Pettes then and there pointed out the property therein enumerated, and said that he gave possession of it to Neale in behalf of the defendant; but none of it was moved, nor was the use of it by Pettes or his family changed,

and it was arranged between him and Neale that the purpose for which Neale was there should be concealed from the family and the servants. Neale remained in and about the premises until November 8, having been absent on one occasion for several hours, but finding all the property unmoved on his return.

It was the defendant's intention to remove the property immediately upon taking possession, but he delayed to do so at the request of Pettes, who promised to "arrange the matter." On November 8, teams were sent by the defendant to remove it, but, the proceedings in insolvency having meanwhile been instituted, the messenger claimed it and refused to consent to its removal. On that day, with the assent of Pettes, Alonzo F. Neale took the place of John B. Neale, and remained until after the service of the writ, which was on November 22, in the same manner as John B. Neale had done; and, when he came, John B. Neale and Pettes went with him about the premises and pointed out to him the property. During the stay of the Neales, they had with them the bill of parcels; and, when the writ was served, Alonzo F. Neale showed to the officer the property as enumerated in the bill, and that it was all on the premises at the time. The use of the property by Pettes and his family, including the driving of the horses and carriages as usual, while the Neales continued there, was with their consent and permission.

The plaintiffs contended that the papers which passed between Pettes and the defendant constituted a mortgage; that they were not so stamped with internal revenue stamps of the United States as to authorize the defendant to introduce them in evidence to show title to the property; and that no such possession of the property was taken and retained by the defendant as to enable him to withhold it from the assignees in insolvency.

On these facts, the judge directed a verdict for the defendant.

*W. Colburn*, for the plaintiffs. The papers constituted a mortgage of personal property. *Murphy* v. *Calley*, 1 Allen, 107. *Woodward* v. *Pickett*, 8 Gray, 617. *Parks* v. *Hall*, 2 Pick. 206. The mortgage not having been recorded, the property passed to the assignee, if it was not "delivered to and retained by the mortgagee." Gen. Sts. c. 151, § 1. *Brigham* v. *Jordan*, 1

Allen, 373. The facts do not show that the property was "delivered to and retained by the mortgagee," within the meaning of the statute, especially as such delivery as was made was kept secret, and the property was used by the mortgagor as usual, and parts of it were allowed to go beyond Neale's possession or control.

2. The papers constituting a mortgage should have been stamped with stamps fifteen dollars in amount, and were not admissible in evidence. U. S. St. 1864, *c.* 173, § 151. U. S. St. 1865, *c.* 78, § 1. U. S. St. 1866, *c.* 184, § 9. *Beebe* v. *Hutton,* 47 Barb. 187. *Garland* v. *Lane,* 46 N. H. 245. *Plessinger* v. *Depuy,* 25 Ind. 419. *Hugus* v. *Strickler,* 19 Iowa, 413.

*L. Child & L. M. Child,* for the defendant.

BIGELOW, C. J. The transaction between the defendant and the insolvent debtor on the sixteenth day of August, 1866, as it appears on the face of the written contracts then executed by the parties, was in effect a mortgage of the chattels now in controversy. It was a conveyance of them made to secure the payment of a loan of money at a future day, defeasible on the payment of a note given for the amount of the sum loaned. There is nothing in the facts stated in the report which tends to show that this transfer was made under circumstances which would render it invalid either at common law or as contrary to the provisions of the insolvent law. This is conceded. But it is contended by the plaintiffs that the conveyance is void as to them in their capacity as assignees because the documents constituting the mortgage were not placed on record as required by Gen. Sts. *c.* 151, § 1, nor was the mortgaged property delivered to and retained by the mortgagee as is required by the same section. If either of these requisitions were complied with before the plaintiffs' title accrued on the eighth day of November, 1866, the transfer would be valid within the express provisions of the statute. It is conceded that there was no record. The point on which this part of the case turns is whether the defendant had received delivery of the articles and retained them in his possession from the time when the first publication of the notice of the mortgagor's insolvency took place. To this inquiry the ad-

mitted facts give a clear and decisive answer. The defendant's authorized agent took possession of the property in person on the fifth day of November, and continued substantially in the charge and custody of it until after the commencement of the insolvency proceedings. It certainly was not necessary to deliver the property to the defendant in person; the delivery of it to the agent was equally efficacious and operative to vest the possession in his principal. Nor was removal of the property at all essential; delivery and possession are acts which can occur irrespectively of place. If the acts are proved, it is immaterial that they were consummated at the place of residence of the mortgagor; it is sufficient if it is proved that the defendant's agent was upon the premises where the property was situated, so that he had substantial control of it, and was at all times in such situation that he could maintain the right of his principal to its permanent custody. This we think is sufficiently shown by the facts proved at the trial. *McPartland* v. *Read*, 11 Allen, 231. A suggestion was made by the plaintiffs' counsel that the notice of the possession and of its retention by the defendant's agent did not give publicity to the acts of the parties, and that creditors had no notice of any change in the condition or retention of the property. But the statute requires no particular mode of taking or retaining possession, and no ceremony or formality in order to render such transaction public or notorious. It is therefore sufficient if it is shown that the delivery and possession were so made and retained as to be legally operative and effectual. There can be no doubt that such possession of the property in controversy as was held by the defendant's agent would have been sufficient if the question at issue was whether a sheriff's officer had obtained and kept effectual possession of chattels adequate to maintain an attachment. *Train* v. *Wellington*, 12 Mass. 495. It is well settled that, in order to make a valid attachment, the officer must have actual permanent custody of the goods.

The only remaining question is whether the written instruments under which the defendant claims the property in dispute should have been excluded for want of sufficient stamps under

the provisions of the revenue laws of the United States. It is conceded that the omission to affix the stamps which are required by law in cases where a mortgage is made to secure a debt or sum of money of the amount which was due to the defendant, was not in consequence of any fraudulent intent to defraud the revenue, but was caused solely by inadvertence or mistake. It is also indisputable that the note and the bill of parcels and the two receipts, as well as the agreement of defeasance by which the defendant agreed to reconvey the property on the payment of the sums loaned by him, all bear the requisite stamps, when regarded as separate contracts disconnected from each other. No doubt as between the original parties the legal effect of the whole transaction, as shown by the written contracts when taken together, was to vest in the defendant a defeasible title as mortgagee of the chattels. But it was not necessary in support of the defendant's title that he should offer in evidence the contract of defeasance. It was sufficient for him to prove the bill of parcels, the note, and the receipts, and to show an actual delivery and possession of the property by law. The only paper which did not bear the requisite stamp was the contract of defeasance. It was only by the introduction of this in evidence that the title, which, as without it, was absolute in the defendant, could be shown to be constructively a mortgage. If it was rejected for the want of a stamp, on the objection of the plaintiffs, the right of the defendant to the property, upon the written documents to which no objection could be taken for the want of the necessary stamps, would be obvious and complete. We doubt very much whether the provision of the statute of the United States, (U. S. St. 1866, *c.* 184, § 9,) can be applied in such manner as to render contracts, which on their face bear adequate stamps, inadmissible in evidence or inoperative, by showing that they were executed in connection with another paper which is inadmissible for the want of a stamp, but which if admitted would give to them a different legal effect and operation from that which would result from them if construed by themselves.

But there is another view of this part of the case which leads

us to the conclusion that the want of a stamp did not render the written documents offered by the defendant inadmissible. The provision of the statute of the United States already cited does not in terms apply to the courts of the several states. The language of the enactment is only that no instruments or documents not duly stamped shall " be admitted or used as evidence in any court " until the requisite stamps shall be affixed.* This provision can have full operation and effect if construed as intended to apply to those courts only which have been established under the constitution of the United States and by acts of Congress, over which the federal legislature can legitimately exercise control, and to which they can properly prescribe rules regulating the course of justice and the mode of administering justice. We are not disposed to give a broader interpretation to the statute. We entertain grave doubts whether it is within the constitutional authority of Congress to enact rules regulating the competency of evidence on the trial of cases in the courts of the several states, which shall be obligatory upon them. We are not aware that the existence of such a power has ever been judicially sanctioned. There are numerous and weighty arguments against its existence. We cannot hold that there was an intention to exercise it, where, as in the provision now under consideration, the language is fairly susceptible of a meaning which will give it full operation and effect within the recognized scope of the constitutional authority of Congress.

<em>Exceptions overruled.</em>†

---

* The provision in the U. S. St. of 1866, *c.* 184, § 9, is as follows : " That hereafter no deed, instrument, document, writing, or paper required by law to be stamped, which has been signed or issued without being duly stamped, or with a deficient stamp, nor any copy thereof, shall be recorded or admitted or used as evidence in any court until a legal stamp or stamps denoting the amount of tax shall have been affixed thereto as prescribed by law."

† A similar decision upon the last point was made at October term 1867 for Bristol, in the case of