Grafton, }
June, 1898. }

## CORNING v. RECORDS & Tr., CLARK, Claimant.

## SAME v. SAME.

## LOVEJOY v. SAME.

A sale of chattels in the custody of a lessee is valid as against creditors of the vendor without actual delivery and change of possession, and is not invalidated by failure of the vendee to notify the lessee of the change in ownership during the term of the lease.

A plaintiff in trustee process does not acquire a lien upon specific chattels in the hands of the trustee by service upon him, and cannot, by virtue of such service, avoid a conveyance of such property by the debtor, on the ground that it is fraudulent in law because intended as security for a debt, although absolute in terms.

FOREIGN ATTACHMENT. Issue between plaintiffs and claimant. There are three suits. Process was served on the trustee July 29, August 13, and August 30, 1896, in the respective suits. Facts found by a referee.

The plaintiffs claimed to charge the trustee for "all the personal property of every kind and description in use during the summer season of 1896, in and about the Maplewood, Hotel and premises thereof in Bethlehem." Prior to June 12, 1896, this property was owned by Albert Geiger, and by him leased to the trustee Cruft for one year, the lease terminating October 1, 1896. Under the lease and during its term the trustee had possession of the chattels described, at Bethlehem in this county. After the execution of the lease and prior to June 12, 1896, Geiger sold the property to the defendant Records. Cruft was notified of the sale and subsequently held the same as the defendant's, subject to his own rights under his lease. Records' only possession of the property was that of Cruft as lessee for him.

June 12, 1896, Records for a valuable consideration amounting to $5,500, $5,000 of which was cash then paid, executed a bill of sale under seal of the property to the claimant Clark. At the same time and as part of the same transaction, Records gave Clark his promissory note for $5,500, payable in two months, and Clark gave Records an agreement under seal by which he agreed to reconvey to Records the personal property conveyed to him by Records' bill of sale, upon the payment of Records' $5,500 note according to its terms. The transaction

was intended to be, and so far as its nature is a question of fact is found to have been, a mortgage to secure the sum of $5,500. These instruments were executed and delivered at Boston, Massachusetts. The transaction was in good faith and without any intent to defraud creditors, but there was neither the record or oath required by P. S., c. 140, ss. 5, 6. No possession was taken by Clark and no notice given Cruft, the trustee, until August 19, when he received from the claimant's attorneys a request to hold the property "from this time forth for W. A. Clark, Jr.," the claimant. In this letter was enclosed a copy of the bill of sale, Records to Clark, but no reference was made to the agreement to reconvey. The plaintiffs at the time of service of the trustee process had no knowledge of Clark's claim to the property. Clark claims to hold the property as security for the $5,500 note and interest. The plaintiffs deny Clark's title and ask to have the trustee charged for all the property, disregarding Clark's claim. No attachment was made of the property in the hands of the trustee except what was made as matter of law by service of the writ upon the trustee.

*Bingham, Mitchell & Batchellor* (with whom was *George W. Anderson* of Massachusetts), for the plaintiffs.

*Smith & Sloane*, for the claimant.

PARSONS, J. The only issue is between the plaintiffs and the claimant. The question is whether the plaintiffs can take the property without first satisfying Clark's claim for money loaned Records in reliance upon the property as security. The transfer to Clark was in good faith, with no intent to defraud creditors, and as between the parties is conceded to be valid.

The first ground upon which the plaintiffs claim Clark's title is invalid as to them is that the conveyance from Records to him was a chattel mortgage (Jones Ch. Mort., s. 19; *Potter* v. *Locomotive Works*, 12 Gray 154; *Carpenter* v. *Snelling*, 97 Mass. 452; *Tuber* v. *Hamlin*, 97 Mass. 489), invalid because neither sworn to nor recorded. P. S., c. 140, ss. 2, 6, 10, 12. Conceding for the purpose of discussion that the conveyance was in mortgage, the only question is of delivery or change of possession; for if there was a sufficient delivery to Clark, his title is good against every one, if he holds by way of mortgage. *Clark* v. *Tarbell*, 57 N. H. 328; *Smith* v. *Moore*, 11 N. H. 55; *Morse* v. *Powers*, 17 N. H. 286; P. S., c. 140, ss. 2, 12. At common law, a mortgage of personal property was valid without change of possession. *Haven* v. *Low*, 2 N. H. 13; *Ash* v. *Savage*, 5 N. H. 545; *Hoit* v. *Remick*, 11 N. H. 285; *Barker* v. *Hall*, 13 N. H. 298. Since the statute, delivery of possession is essential to the validity of such a mortgage

unless the substitute prescribed by the statute, oath and record, is strictly complied with.

No different delivery is required in the case of a mortgage than of an absolute sale. A delivery sufficient to pass the title as against third persons in the one case will in the other. *Smith v. Moore*, 11 N. H. 55, 65. "The general rule is that delivery of possession is necessary in a conveyance of personal chattels as against every one except the vendor. . . . An actual delivery by the vendor . . . is not in all cases necessary. It is enough if the delivery be such as the situation of the property admits. . . . And when the goods are so situated as to admit of no delivery, the sale will be valid without any delivery. . . . All cases of sales of chattels which are so situated that there can be no delivery at the time of the sale, are within the exception to the general rule, whether the chattels be upon the land or upon the water. Negligence on the part of the vendee to take possession may invalidate his claim, as against creditors or subsequent purchasers without notice; but if there be no laches on the part of the vendee, if he take possession in a reasonable time, his title can in no case be impeached for want of possession." *Ricker v. Cross*, 5 N. H. 570, 571, 572.

Among the illustrations given by *Richardson*, C. J., are the sale of a ship and goods at sea. In *Conard v. Insurance Co.*, 1 Pet. 386, 449, it is said: "In case of even an absolute sale of personal property, the want of such possession is not presumptive of fraud if possession cannot, from the circumstances of the property, be within the power of the parties. The same rule applies in case of a ship in a distant port, and of a sale of goods already in the hands of the purchaser where a change of possession is impossible." *Manton v. Moore*, 7 T. R. 67. *Ricker v. Cross* was approved in *Patrick v. Meserve*, 18 N. H. 300, where the title was held to pass without delivery when the chattels were at a considerable distance from the parties; and in *First Nat'l Bank of Peoria v. Railroad*, 58 N. H. 203, 204, which was trover by the holder of a bill of lading, who had made advances on the goods, against a common carrier who had delivered the goods to a third party. It is said in the opinion: "The delivery of the bill of lading takes the place of delivery of the goods, for no delivery of the latter is practicable at the time, and the symbolical delivery of the bill is sufficient to pass the title." While the latter case may perhaps stand upon a rule peculiar to bills of lading, it is the impracticability of actual delivery which is the foundation of that rule. The rule requiring actual delivery and change of possession in the sale of chattels applies only when the chattels are in possession and an actual change can be had. Hence, "where the goods sold are in the custody of another, and an order is given to the depositary to deliver them to the buyer, which is

presented to him, there the sale is complete." *Pinkerton* v. *Railroad*, 42 N. H. 424, 452; *Stowe* v. *Taft*, 58 N. H. 445; *Tuxworth* v. *Moore*, 9 Pick. 346, 348; *Plymouth Bank* v. *Bank*, 10 Pick. 454, 459; *Pratt* v. *Parkman*, 24 Pick. 42.

In the present case, the property is described in the agreement given Records by Clark as " all the personal property in and about Maplewood Hotel premises at Bethlehem, N. H.," a description in substance that given us by the referee. It was located at Bethlehem, the parties were at the time in Boston, and, if nothing else appeared, the property might well be held to have passed without manual tradition on account of its character and situation relative to the parties, subject to impairment of Clark's title in its validity as to third persons by his negligence in obtaining actual possession; but a more satisfactory reason why actual manual possession was not given, and a more substantial ground for the conclusion that the title passed without manual tradition of the property, rests in the fact that both were impossible. The property was in the possession of Cruft, under a lease for a definite term from Geiger, from whom Records received such title as he had. The lease is not before us, but we infer from the term used that it was a bailment for hire. Under such a contract Cruft had both the possession and the right to the possession. Records had neither, and never had. The law did not require him to commit a trespass, or a breach of the covenants of the lease, to enable him to transfer to Clark what Geiger had sold to him.

The property during the lease was not subject to levy on attachment or execution against Geiger, Records, Clark, or whoever was the general owner; it could be attached as against them, if at all, only by trustee process (*Hartford* v. *Jackson*, 11 N. H. 145; *Smith* v. *Niles*, 20 Vt. 315; Drake Att., ss. 245, 246), while Cruft's interest was subject to attachment and levy. *Wheeler* v. *Train*, 3 Pick. 255.

As the property could not be levied upon during the term, Cruft could not be charged as trustee as long as he held under the lease. P. S., c. 245, s. 33. As Cruft, as bailee, had the exclusive right to the possession, not only against third persons but against the general owner as well (Sto. Bailm., s. 395), it was not only impracticable, but impossible, for Records lawfully to have actual possession or to deliver it to Clark. The law does not require what is impossible. Records' right was merely to receive the property at the termination of the lease; and to a valid transfer of that right, a manual tradition of the property he had the future right to receive was no more essential than a transfer of a future right to receive the same value in money would require an actual delivery of cash. The right he received from Geiger and transferred to Clark resembled, if it was not in

effect, a mere chose in action. The transaction was, in substance, in both cases an assignment of a right rather than a sale of chattels.

It is held in the cases cited above, and is a general rule, that where personal chattels are in the custody of a third person and he is notified of the sale, no change of possession is required. *Morse* v. *Powers*, 17 N. H. 286; *Brown* v. *Warren*, 43 N. H. 430; *Stowe* v. *Taft*, 58 N. H. 445. In the present case, the mortgagee, Clark, could neither take nor lawfully demand the actual possession. If he gave notice of his claim to Cruft, such notice could be in legal effect only that at the expiration of the term he would demand possession. From the situation of the property and the parties, the title passed to Clark without any delivery, and the sole remaining question is whether Clark's failure to notify Cruft until August 19 was such negligence in obtaining possession of the chattels conveyed to him as to invalidate his title as against third persons. If he was obliged to give such notice there must be some sound reason for it. Since the earliest date upon which Clark could get possession was October 1, he cannot be guilty of negligence in not obtaining possession before he lawfully could, or for not making a useless demand for possession to which he was not entitled. It has not been expressly decided in this state that a mere custodian, even, could be charged for goods in his hands as against a *bona fide* claimant, on the ground that notice did not reach the trustee until after the trustee process was served. But the assent of the depositary can no more affect the passing of the title and can be no more necessary than the assent of a debtor to the assignment of a debt (*Conway* v. *Cutting*, 51 N. H. 407; *Garland* v. *Harrington*, 51 N. H. 409; *Pollard* v. *Pollard*, 68 N. H. 356; *Marsh* v. *Garney*, *ante*, *p.* 236), in which case the assignment protects the assignee's rights if the debtor has notice in season to take advantage of it before judgment against him, although he has no knowledge of it at the time he is summoned. *Pollard* v. *Pollard*, *supra; Dix* v. *Cobb*, 4 Mass. 508; *Kingman* v. *Perkins*, 105 Mass. 111; Drake Att., *s.* 608.

There would seem to be no occasion for a different rule where the subject of the deposit is personal chattels rather than money. As the assent of the custodian cannot be essential to pass the title, notice to him where the purchaser has exercised diligence to secure possession of the goods can only be necessary upon the ground that one cannot be made custodian for another without his consent, express or implied, and hence in order that the possession of the custodian should enure to the purchaser, it must appear expressly or by implication that he had agreed or assented to hold for him. This is the argument in *Hallgarten* v. *Oldham*, 135 Mass. 1. This view, however, is not generally adopted and has been extensively criticised, while *Lanfear* v. *Sumner*, 17 Mass.

110, upon which the decision is based, is distinctly disapproved by *Richardson*, C. J., in *Ricker* v. *Cross*, 5 N. H. 570, 573. But whether the argument is sound or not, it has no application in this case, for Cruft was not a mere depositary, but held under a lease for a definite term. Unless by the terms of the lease to Cruft a transfer of the general ownership terminated the lease, there is no reason why notice to him should be essential to pass the title. If upon such notice he was not discharged from his lease, he could not dissent and refuse to hold the property. If he could not dissent, his assent could not confer any right. If he could not dissent, his continuing to hold the property would not be an assent and agreement to hold the property for Clark. If neither his assent nor his dissent, or his refusal to do either, affected the title, no legal reason exists why he should have an opportunity for a choice which he could not be compelled to exercise and which was immaterial if made. His holding was under his lease, and no legal reason can be given for an arbitrary power of assent or dissent vested in him as a restraint upon the power of alienation in the general owner. Hence, Clark's title is equally valid whether Cruft dissented or assented, whether Cruft had or had not notice. The reason assigned in all the cases declaring the unexplained possession by the vendor after an absolute sale conclusive evidence of fraud, is that the vendor is given an opportunity to treat the property as his own and thereby gain a false credit. *Trask* v. *Bowers*, 4 N. H. 309; *Lewis* v. *Whittemore*, 5 N. H. 364; *Page* v. *Carpenter*, 10 N. H. 77; *Morse* v. *Powers*, 17 N. H. 286; *Mandigo* v. *Healey*, ante, p. 94. It is the open possession by the vendor as owner that works the fraud. In this case Records never had any possession. There was nothing about the continued possession of Cruft that tended to give Records any false credit. If it should be suggested that upon inquiry of Cruft his statement as to the general ownership would have that effect, there is no more foundation for such claim than there would have been had he owed him a debt on account or a promissory note. Neither would Cruft have been under any obligation to furnish information if he had it. Delay in notifying Cruft may or may not under all the circumstances have weight on the question of fraud in fact, and undoubtedly was duly considered by the referee; but of itself it cannot under the circumstances amount to fraud as matter of law.

But whatever view as between the parties in equity, for the protection of Records' equitable interest in the property, should be taken of the transaction between Records and Clark, it is clear that the conveyance from Records to Clark was not a mortgage within the contemplation of the statute. It contained no condition and therefore could not be verified by affidavit. The law contains no provision for the record of such an instrument. Its record would have added nothing to its validity.

The conveyance was absolute in terms, but intended as security. There was an express secret trust. Such a conveyance, of either real or personal property, is fraudulent in law, though no fraud in fact is intended, and is void against creditors of the grantor who seize the property by attachment or levy. *Watkins* v. *Arms*, 64 N. H. 99; *Stratton* v. *Putney*, 63 N. H. 577; *Coolidge* v. *Melvin*, 42 N. H. 510, 522. But such a conveyance has heretofore been understood to be valid as between the parties, and as against all creditors of the vendor except those who by attachment or levy seize the identical property (*Jones* v. *Bryant*, 13 N. H. 53; *Hill* v. *Bank*, 45 N. H. 300, 309; *Ritchie* v. *Glover*, 56 N. H. 510), and as against trustee process (*Boardman* v. *Cushing*, 12 N. H. 105), and as against the grantor's assignee in insolvency. *Thompson* v. *Esty*, ante, p. 55.

The plaintiffs, however, contend that the service of the writ upon Cruft created a lien in their favor upon the specific chattels in his possession, by force of which they acquired the same rights as against Clark's title as if the chattels claimed had been actually seized by the sheriff.

That trustee process is an equitable proceeding in which the rights of the parties are determined upon equitable principles, and that, in the absence of fraud in the intent, the trustee cannot be charged for chattels in his possession unless he has in his hands property belonging to the defendant which the defendant has the legal right to take and carry away, are propositions for which in this state the citation of authority seems superfluous. *Pollard* v. *Pollard*, 68 N. H. 356; *Tucker* v. *Chick*, 67 N. H. 77; *Nat'l Revere Bank* v. *Shoe Fastening Co.*, 67 N. H. 371; *Carter* v. *Webster*, 65 N. H. 17; *Proctor* v. *Lane*, 62 N. H. 457, 463; *Robinson* v. *Mitchell*, 62 N. H. 529; *Forist* v. *Bellows*, 59 N. H. 229; *Landry* v. *Chayret*, 58 N. H. 89; *Banfield* v. *Wiggin*, 58 N. H. 155; *Gutterson* v. *Morse*, 58 N. H. 529; *Conway* v. *Cutting*, 51 N. H. 407; *Garland* v. *Harrington*, 51 N. H. 409; *Richards* v. *Railroad*, 44 N. H. 127, 129; *Pittsfield Bank* v. *Clough*, 43 N. H. 178, 187; *Brown* v. *Warren*, 43 N. H. 430; *Rand* v. *Railroad*, 40 N. H. 79, 87; *Getchell* v. *Chase*, 37 N. H. 106, 110; *Swamscot Machine Co.* v. *Partridge*, 25 N. H. 369, 373, 374; *Boardman* v. *Cushing*, 12 N. H. 105; *Paul* v. *Paul*, 10 N. H. 117, 120; *Greenleaf* v. *Perrin*, 8 N. H. 273; *Hutchins* v. *Sprague*, 4 N. H. 469.

That upon equitable principles the trustee could not be deprived of his right to hold the property in his hands as security because the conveyance to him was absolute in form, though intended as security, is expressly decided in *Boardman* v. *Cushing*, 12 N. H. 105, 114, where it is said by *Parker*, C. J., "it would not consist with equity to deprive the party of a mortgage security, by reason of a mere mistake in the mode of taking it."

The claimant is properly made a party to the action. P. S., c. 245, s. 25. Where it appears a third party claims the property, the validity of his claim will not be passed upon unless he is made a party. *Dyer* v. *Webster*, 18 N. H. 417. He is made a party for the protection of his equitable as well as his legal right. *Pollard* v. *Pollard, Garland* v. *Harrington, Conway* v. *Cutting, supra.* The admission of the claimant as a party to the suit does not alter the issue. The sole question is whether the trustee shall be charged or discharged. If the claimant, having obtained leave, does not appear, nevertheless the trustee is discharged if it appears on the evidence that the property in his hands is the property of the claimant and not of the principal defendant. *Cram* v. *Shackleton*, 64 N. H. 44. If the property is not the defendant's, the trustee is discharged without consideration of the claimant's title. *Rice* v. *Glass Co.*, 60 N. H. 195. The sole question is whether the property is the property of the defendant; and in the absence of fraud in intent, or statutory requirements, as in the case of assignments of wages to be earned in advance (P. S., c. 215, s. 4), or when the claimant's or trustee's title is purely legal and not equitable, and technically defective, as in cases of assignments in insolvency under the statutes of another state or in contravention of the law of this state (*Saunders* v. *Williams*, 5 N. H. 213; *Hurd* v. *Silsby*, 10 N. H. 108; *Derry Bank* v. *Davis*, 44 N. H. 548), the plaintiff can charge the trustee only on the strength of the defendant's title; for the object of the proceeding "is to reach the property of the debtor in the hands of third persons. In applying this remedy, the facts must first be ascertained, and the ownership of the property determined. But it can never be appropriated to pay the debt of the plaintiff until it is shown to belong to the defendant." *Kaley* v. *Abbott*, 14 N. H. 359, 362; *Brown* v. *Silsby*, 10 N. H. 521; *Leland* v. *Sabin*, 27 N. H. 74; *Rice* v. *Glass Co.*, 60 N. H. 195. The subject for inquiry in all the cases is, to whom did the property actually belong, regardless of the question whether at the time of service the trustee had notice of the adverse claim.

In *Giddings* v. *Coleman*, 12 N. H. 153, the precise question in this case was raised. The claimant based his title upon an assignment absolute in form, but intended as security. This case was decided at the same term with *Boardman* v. *Cushing*, and though decided against the claimant on the ground that the existence of the assignment was not sufficiently proved, the court say further: "The question raised at the argument by the counsel for the plaintiff as to the validity of the assignment, upon the ground of alleged legal fraud, becomes immaterial upon the view taken of the other questions raised upon the case. And if it were otherwise, it could not prevail, for the reasons contained

in the opinion of the court, delivered by the chief justice, in the case of *Boardman* v. *Cushing* at this term."

*Boardman* v. *Cushing*, decided in 1841, has been repeatedly cited and approved, and was discussed and relied upon in *Thompson* v. *Esty, ante, pp.* 55, 70. See, also, *Stedman* v. *Vickery*, 42 Me. 132, 134. The plaintiffs' proposition calls upon us, not only to overrule *Boardman* v. *Cushing* and *Giddings* v. *Coleman*, which are precisely in point, but the whole current of authority in this state establishing the principles of equitable procedure in trustee process.

But we are not called upon to weigh the soundness of this claim against the long line of well considered cases which have been cited, for the premise upon which it is founded is fatally defective. A plaintiff in trustee process does not acquire a lien upon the specific property in the hands of the trustee by service upon him. The substantial difference between attachment by direct seizure and by trustee process is that the validity of the attachment in the latter case does not depend upon the officer's taking or retaining possession of the property, and creates no specific lien upon the defendant's property in favor of the plaintiff. In place of such lien, the plaintiff acquires a right to hold the trustee personally responsible for the value of the goods for which he may be charged. Drake Att., *s.* 453; 2 Wood Att., *s.* 325; 2 Shinn Att., *s.* 467; *Bufford* v. *Sides*, 42 N. H. 495, 504; *Wolcott* v. *Keith*, 22 N. H. 196, 205. Such appears to be the general rule (*Johnson* v. *Gorham*, 6 Cal. 195; *Bigelow* v. *Andress*, 31 Ill. 322; *Gregg* v. *Savage*, 51 Ill. App. 281; *McConnell* v. *Denham*, 72 Ia. 494; *Mooar* v. *Walker*, 46 Ia. 164; *McGarry* v. *Coal Co.*, 93 Mo. 237; *Maish* v. *Bird*, 48 Fed. Rep. 607); and if it were not so upon authority, a sufficient answer would be that no such lien is given by statute, for the remedy of the plaintiff, if the trustee neglects or refuses to deliver the goods for which he is adjudged chargeable, is not in following the goods but in a personal judgment against the trustee. P. S., *c.* 245, *ss.* 33, 34; *Aldrich* v. *Woodcock*, 10 N. H. 99, 103; *Despatch Line* v. *Bellamy Co.*, 12 N. H. 205, 238.

What the rule is in Massachusetts under the language of the statute of the state (Mass. P. S., *c.* 183, *s.* 21) is unnecessary to consider. *Parker* v. *Kinsman*, 8 Mass. 486; *Burlingame* v. *Bell*, 16 Mass. 318; *Swett* v. *Brown*, 5 Pick. 178; *Platt* v. *Brown*, 16 Pick. 553; *Rockwood* v. *Varnum*, 17 Pick. 289, 293.

That the service of the writ upon the trustee constitutes an attachment of the defendant's property rights in the trustee's hands is beyond question (*Broadhurst* v. *Morgan*, 66 N. H. 480; *Nelson* v. *Sanborn*, 64 N. H. 310; *Pratt* v. *Sanborn*, 63 N. H. 115; *Page* v. *Thompson*, 43 N. H. 373, 376; *Young* v. *Ross*, 31 N. H. 201, 205; *King* v. *Holmes*, 27 N. H. 266; *Blaisdell* v. *Ladd*, 14

N. H. 129); but it has never been suggested that any special property, such as is acquired by the officer in goods seized, accrued to the officer or the creditor in the specific chattels in the trustee's possession, while it is clear a right or lien is created in the trustee to hold them, if he elects so to do, to answer to the process. The statement of *Richardson*, C. J., in *Burnham* v. *Folsom*, 5 N. H. 566, that "the service of the process of foreign attachment upon the trustee creates a lien in favor of the plaintiff, upon the debt or property in the hands of the trustee," is not an authority for the plaintiffs' claim to a lien giving them a special property in specific chattels, for the lien Judge *Richardson* had in mind was one which would attach as well to a debt as to chattels.

Upon grounds already suggested, there was a sufficient delivery from Records to Clark. If there were not, the want of change of possession would only imply a secret trust where one is expressly found. If Clark's title is not invalidated by the one, it is not by the other. See *Robinson* v. *Mitchell*, 62 N. H. 529. Clark has an equitable interest in the property claimed to be held by the trustee process to the extent of his $5,500 note and interest. Whether Records' equitable title to the property — his right of redemption upon payment of the amount for which the property is held by Clark — is attachable on trustee process, is a question not raised. However that may be, upon payment or tender to Clark by the plaintiffs of the amount of his claim, which has already been adjudicated, the property will stand in Cruft's hands released therefrom; and the lease having terminated, Cruft may then be charged therefor. At the trial term such orders will be made as may be necessary to protect the rights of the parties. P. S., c. 245, ss. 32, 34; *Isabelle* v. *LeBlanc*, 68 N. H. 409.

*Case discharged.*

All concurred.