STIRNEMAN v. SMITH et al.

(Circuit Court of Appeals, Eighth Circuit. February 23, 1900.)

No. 1,244.

1. FACTORS—CONVERSION—EVIDENCE.

In an action against a commission merchant for the proceeds of prod-uce sold by him and not accounted for, evidence that, several weeks after defendant claimed to have disposed of all apples received from plaintiffs, a large quantity were seen in his cellar, which not only corre-sponded in species with those shipped by the consignors, but were packed in barrels on which their initials were stamped, and that they were then worth a price named per barrel, was properly admitted, as tending to show that defendant had a considerable quantity of the apples in his pos-session some weeks after he claimed to have sold them all and to have accounted for the proceeds, and that the fruit was even then in good condition, and worth as much as was claimed by plaintiffs.

2. SAME—CARE OF GOODS—EVIDENCE.

Defendant having introduced evidence that the apples consigned to him were of poor quality and had not been properly packed by the shippers, and that by reason of these facts they had to be rehandled and sorted before they were placed on the market, it was proper to admit deposi-tions of witnesses, in rebuttal, tending to show that the apples were of fine grade and quality, had been well and skillfully packed before ship-ment, in good barrels, and that, being so packed and in fine condition, they would not be apt to sustain injury by transportation.

3. INTERNAL REVENUE LAW—STAMP TAX—CERTIFICATE OF NOTARY TO DEPO-SITION.

A notary public when engaged in taking depositions to be used as evi-dence before some judicial tribunal being a judicial officer, the certificate authenticating his official acts as such officer is not within Internal Reve-nue Act June 13, 1898 (30 Stat. 455, 460, c. 448) Schedule A, requiring a 10-cent stamp to be affixed on a "certificate of any description required by law not otherwise specified in this act."

In Error to the Circuit Court of the United States for the District of Minnesota.

Edward Lees (M. B. Webber, on the brief), for plaintiff in error.
John M. Rees, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. Levi J. Smith and George T. Mortland, the defendants in error, who are co-partners under the name of L. J. Smith & Co., and several other persons, in the fall of the year 1897 consigned to Jacob Stirneman, the plaintiff in error, about 3,735 barrels of apples of various kinds, to be sold by him on commission; the proceeds to be duly accounted for when sold. Stirneman was at the time a commission merchant residing and doing business at Winona, Minn., to which place the apples were consigned. The con-

signors appear to have been residents of Calhoun county, Ill., where the fruit was grown, and from whence it was shipped to Winona. The proceeds received from the shipment not proving satisfactory, the several consignors other than L. J. Smith & Co. assigned their claims to the latter firm, which thereupon brought an action against Stirneman to recover from him the total sum claimed to be due to the several consignees. The complaint was so drawn as to permit of a recovery on either one of two theories: First, on the ground that the consignee had been negligent in the performance of his duty to his principals, by reason of which fact he had neither obtained for the apples what they were reasonably worth in the market, nor what might have been obtained for them by the exercise of proper diligence on his part; and, second, on the ground that the consignee had not accounted to his principals for all the money which he had actually received for the apples, by reason of which fact he was still indebted to them in a large sum, amounting to something more than $5,000. The defendant below replied to the complaint by alleging, in substance, that on the receipt of the apples in question it had been found necessary to rehandle and repack nearly 600 barrels thereof; that many of the apples, when repacked, were found to be rotten and unfit for the market; that he had incurred large expenses in repacking the fruit, and had then sold it to the best advantage; and that, after paying such expenses and freight bills and his own commission, he had fully and honestly accounted to his principals for the balance in his hands. The case appears to have been tried to a jury upon both of the theories above outlined; resulting, after the introduction of much conflicting testimony, in a judgment for the plaintiffs below in the sum of $2,470.15.

It is first assigned for error that in the course of the trial the court erroneously permitted a witness for the plaintiffs to testify, in substance, that on March 2, 1898, he went into the cellar underneath the defendant's place of business in Winona, and there saw a large quantity of apples which not only corresponded in species with those that had been shipped to him by the several consignors, but were packed in barrels on which the names or the initials of two of the consignors had been stenciled, and that the fruit was then in good condition, and was worth from $3 to $3.75 per barrel. It is said that the admission of this testimony was improper, because the incident occurred several weeks after the defendant below claimed to have disposed of all of the apples that had been shipped to him, and that the identification of the fruit as a part of that which had been received by him from the several consignors was incomplete. We are unable, however, to attach any importance to this suggestion. The testimony in question had a marked tendency to show that the defendant had a considerable quantity of the apples in his possession some weeks after he claimed to have sold all of them and to have accounted for the proceeds, and that the fruit was even then in good condition, and worth fully as much as the plaintiffs claimed that it was worth. If the testimony in question had been rejected the trial court would have committed a palpable error.

It is next insisted that the trial court erred in admitting in evi-

dence certain depositions as rebuttal testimony. It is claimed that the depositions were inadmissible for two reasons: First, because the evidence therein contained should have been offered in chief, and was not competent as rebuttal testimony; and, second, because the notarial certificate authenticating the depositions was not stamped pursuant to law.

The first of these objections is clearly without merit. The defendant below had introduced evidence tending to show that, when the barrels containing the apples in controversy were opened in Winona, it was found that the fruit was in great part of poor quality, and had not been properly packed by the shippers, and that by reason of such facts the apples had to be rehandled and sorted before they were placed on the market. The depositions in question were taken in Calhoun county, Ill., and contained evidence tending to show that the apples in question were of fine grade and quality; that the fruit crop in that county during the season of 1897 was of an excellent character; that the apples had been well and skillfully packed before shipment, in good barrels; and that, being so packed and in fine condition, they would not be apt to sustain injury by transportation from the place of shipment to Winona. We entertain no doubt, therefore, that the proof contained in the depositions was competent, and that it was introduced at the right time to rebut the evidence which the defendant had introduced.

A more important inquiry is whether, under Schedule A of the recent revenue act of June 13, 1898 (30 Stat. 455, 460, c. 448), the notary before whom the depositions were taken was required to affix to his certificate a 10-cent revenue stamp. One clause of Schedule A requires a 10-cent stamp to be affixed on a "certificate of any description required by law not otherwise specified in this act"; and notarial certificates, such as the one involved in the present case, are not referred to by any other provision of the act. Section 14 of said act declares "that hereafter no instrument, paper or document required by law to be stamped which has been signed or issued without being duly stamped, or with a deficient stamp, nor any copy thereof, shall be recorded or admitted or used as evidence in any court until a legal stamp or stamps denoting the amount of tax shall have been affixed thereto as prescribed by law.   *   *   *"   Section 15 of the act makes it unlawful "to record or register any instrument, paper or document required by law to be stamped, unless a stamp or stamps of the proper amount shall have been affixed and cancelled in the manner prescribed by law," and further provides that "the record, registry or transfer of any such instruments upon which the proper stamp or stamps aforesaid shall not have been affixed and cancelled, as aforesaid, shall not be used in evidence." Section 17 of the act declares "that all bonds, debentures or certificates of indebtedness issued by the officers of the United States government, or by the officers of any state, county, town, municipal corporation, or other corporation exercising the taxing power by this act be and are hereby exempt from the stamp taxes required by this act: provided, that it is the intent hereby to exempt from the stamp taxes imposed by this act such state, county, town, or other mu-

nicipal corporations in the exercise only of functions strictly belonging to them in their ordinary governmental taxing or municipal capacity. * * *" In the proviso last quoted is found an explicit declaration on the part of congress that it was not its purpose to impose a stamp tax on any instruments or documents which might at any time be executed for or in behalf of a state, county, town, or other municipal corporation, to enable it to perform its ordinary governmental or municipal functions; and, if there had been no such a declaration, the same result would doubtless have been reached by judicial construction. In the absence of a definite expression on that subject, it would have been inferred, we think, that congress intended to exempt from taxation all the instrumentalities that a state or any of its municipal subdivisions might find it expedient to employ in the discharge of their ordinary governmental functions, and that its purpose was to impose stamp taxes on those instruments only which have their origin in the private transactions of individuals and corporations, or to such instruments and writings as are executed mainly for their benefit, rather than for the benefit of the public. Carpenter v. Snelling, 97 Mass. 452, 458; Green v. Holway, 101 Mass. 243; Knox v. Rossi (Nev.) 57 Pac. 179, and cases there cited. A notary public, when engaged in taking depositions to be used as evidence before some judicial tribunal, is a judicial officer; his duty being to assist the court under whose commission he acts in administering justice. While employed in such work, a notary cannot be regarded as the agent of the person or persons in whose behalf the testimony happens to be taken; but his duties are of an official nature, and in most respects analogous to those of a referee or an examiner or a master in chancery, whose functions are clearly judicial. Moreover, depositions which are taken before a notary or other inferior magistrate in a pending case are neither private papers nor private property, since they must be returned into court and lodged with the clerk, there to remain permanently as a part of the proceedings in the cause. We are of opinion, therefore, that the certificate of a notary, under his hand and seal, authenticating his official acts while serving in the capacity aforesaid, does not fall within the provisions of the recent internal revenue act, but that such a certificate is exempt from taxation, for the reason that while so engaged a notary is performing public duties devolved upon him by law, which are intimately connected with the administration of justice. The same conclusion was reached with respect to such certificates under the internal revenue act of June 30, 1864. Schedule B of that act (13 Stat. 223, 299, c. 173), after enumerating several kinds of certificates to which internal revenue stamps should be affixed, further provided in general terms that an internal revenue stamp of five cents should be affixed to a "certificate of any other description than those specified." It was held, however, that the general language employed in that act did not require a revenue stamp to be affixed to a notarial certificate authenticating depositions, because they were legal documents, and constituted a part of a legal proceeding. Prather v. Pritchard, 26 Ind. 65, 70. See, also, Cardell v. Bridge, 9 Allen, 355, 357. As there are no other questions presented by the record, to

which our attention has been invited by the assignment of errors, which seem to require special notice, the judgment of the lower court will be affirmed.